771 P.2d 880

**ARIZONA BOARD OF REGENTS for and on Behalf of the UNIVERSITY OF ARIZONA and University of Arizona Public Safety Personnel Retirement Local Board, Plaintiffs–Appellants,**

v.

**STATE of Arizona, ex rel. The STATE OF ARIZONA PUBLIC SAFETY RETIREMENT FUND MANAGER ADMINISTRATOR or his successor in office, Defendants–Appellees.**

No. 1 CA–CV 88–007.

Court of Appeals of Arizona, Division 1, Department D.

March 16, 1989.

Office of the University of Arizona Atty. by James L. Richmond, Thomas M. Thompson, Tucson, for plaintiffs-appellants.

Eaton, Lazarus & Dodge, Ltd. by Marc R. Lieberman, Phoenix, for defendants-appellees.

1. Suit was filed originally in Pima County Superior Court but was transferred to Maricopa

## OPINION

GRANT, Chief Judge.

This case involves a dispute between the Fund Manager of the Public Safety Personnel Retirement System (Fund Manager) and the University of Arizona (University) and its Local Board (Local Board), the entity responsible for administering the Public Safety Personnel Retirement System (System) as it applies to the University's members in the System. A.R.S. § 38-842(17). This dispute concerns whether campus security guards employed by the University should be accepted for participation in the System. The Arizona Board of Regents (Regents), on behalf of the University and its Local Board, filed a special action complaint in the Superior Court[1] seeking to order the Fund Manager and its Administrator to accept for participation in the System the University's campus security guards which the Local Board had determined to be eligible and to reinstate those security guards which the Administrator had purported to exclude. The Regents appeal from summary judgment for the defendants.

## FACTS AND PROCEDURAL HISTORY

The Public Safety Personnel Retirement System was created by the Arizona Legislature in 1968, "[i]n order to provide a uniform, consistent and equitable statewide program for public safety personnel who are regularly assigned hazardous duty in the employ of the State of Arizona or a political subdivision thereof...." A.R.S. § 38-841(B). The System was established to take the place of certain existing retirement programs for public safety personnel, and the legislature provided that the groups of employees covered by these prior systems automatically would become members of the System. A.R.S. § 38-841(A) and (B). The legislature provided for additional eligible groups of public safety personnel to participate in the System "pursuant to election by their employer for such coverage under an appropriate joinder agreement." A.R.S. § 38-841(D).

County upon the request of the Fund Manager for change of venue.

The Fund Manager is a five-member body that is charged by A.R.S. § 38–848 with managing the monies accumulated under the System. That statute enumerates the powers expressly granted to the Fund Manager, including the power to appear in legal proceedings to protect these monies. A.R.S. § 38–848(G)(7). Subsection (G)(9) of the statute contains a catch-all phrase providing that the Fund Manager may "[d]o all acts, whether or not expressly authorized, which may be deemed necessary or proper for the protection of the investments held in the fund." The Fund Manager is authorized to employ an Administrator who may take action on behalf of the Fund Manager under its direction. A.R.S. § 38–848(G)(8) and (J)(6).

On June 20, 1974, the University of Arizona entered into a joinder agreement with the Fund Manager. The agreement specified that "University Security Personnel" are to participate in the System. A letter dated June 28, 1974, written by the Regents and approved by the Fund Manager, supplemented the agreement in various respects. The letter stated that the Regents had entered into the joinder agreement on behalf of "eligible University of Arizona security personnel." At the regular meeting of the Fund Manager held on July 12, 1974, the joinder agreement was approved, the minutes of the meeting reflecting that the University's "college campus policemen" were being brought into the System. On December 4, 1974, the Fund Manager's Administrator received a letter and check from the Arizona State Retirement System transferring "University of Arizona Campus Security" from that retirement system into the Public Safety Personnel Retirement System. The letter also stated that listings of the "campus policemen" being transferred were enclosed.

The University security personnel who actually were transferred into the System included not only personnel designated by the University as "campus police officers" but also personnel designated as "security guards." Security guards differed from campus police officers in certain respects. Most significantly, the security guards had no authority to carry guns or to make arrests and were paid less than the campus police officers who had such authority.

According to G. Lowell Sutton, who had been the Administrator of the System since its inception, his office had not known that any University personnel other than campus police officers had been transferred into the System until he discovered nine years later that campus security guards were among the personnel transferred. On November 10, 1983, the Administrator's office notified the University that it had not known the security guards had been enrolled in the System, that it was taking the position that the guards were not now and had never been eligible for membership, and that it was transferring the guards' credited service, member contributions and equivalent employer contributions to the Arizona State Retirement System. The Administrator then made these transfers and notified each of the security guards of the transfer of their memberships to the Arizona State Retirement System.

In the months following the Administrator's actions in transferring the security guards out of the System, apparently no legal action was taken against the Fund Manager or its Administrator. However, on July 18, 1984, the University's Local Board met for the purpose of determining whether Max May, one of the security guards whose retirement system membership had been transferred by the Administrator, was eligible to be included in the System because of his performance of hazardous duties within the meaning of the statute. The Local Board reviewed a transcript of an interview with May in which he had been questioned concerning whether his job was hazardous and whether it differed significantly from that of a police officer. May had applied for benefits from the Arizona State Retirement System because his membership had been transferred to that system and because he had planned to retire on May 1, 1984, but he sought to have the Local Board find that his benefits should instead come from the Public Safety Personnel Retirement System.

On July 24, 1984, the Local Board wrote a letter to the Administrator directing him

to reinstate Max May into the System. The letter explained that the Local Board had determined at its hearing on July 18, 1984, that Max May had been assigned hazardous duty from the time he was hired in 1967 until he retired in 1984, and therefore that he was eligible for inclusion in the System. On August 8, 1984, the Administrator's office informed the Local Board that it would not reinstate May in the System and explained that it felt that the Local Board had no authority to order it to do so. The letter specified that it should be considered merely an explanation of why the Administrator would not reinstate May and was not a request for rehearing of the matter by the Local Board.

On November 15, 1984, the University wrote a second letter to the Administrator, this time instructing the Administrator to reinstate ten of the security guards that the Local Board found were regularly assigned to hazardous duty. The Administrator's office responded by letter of December 19, 1984, again refusing to comply with the Local Board's request and emphasizing that it was not requesting rehearing by the Local Board but merely explaining why it would not reinstate the employees as instructed.

The parties dispute whether the Administrator's office knew or should have known from the time University security personnel joined the System that security guards were included among the personnel being transferred into the System. The University takes the position that the Administrator was then provided with a list indicating the particular job of each University employee being transferred into the System, from which it should have known that security guards were included. The Administrator, though, denies that his office ever saw the list of personnel which the University claims to have sent.

A year later the Regents filed the instant complaint in special action seeking to compel the Fund Manager and its Administrator to reinstate the security guards which

the Local Board had determined to be eligible for membership in the System.[2] The case proceeded before the superior court on cross-motions for summary judgment. The Regents argued in their motion for summary judgment that the Local Board had determined that the security guards were eligible pursuant to statutory authority given to the Local Board to decide questions of eligibility. It argued that the Fund Manager was precluded from challenging the decision of the Local Board because it had failed to seek timely review of the Local Board's decision.

The position taken by the Fund Manager in its cross-motion for summary judgment was that the Local Board had no authority to determine that security guards should be included in the System, and that a proper interpretation of the governing statutes would exclude security guards from membership in the system. Additionally, the Fund Manager maintained that the court had no jurisdiction to entertain the action due to the Local Board's failure to seek timely review of the Fund Manager's previous decision and due to its failure to join the security guards, who the Fund Manager contended were indispensable parties to the litigation.

The trial court found an absence of genuine issues of material fact. It then denied the summary judgment motion of the Regents and granted the cross-motion for summary judgment of the Fund Manager. This appeal followed. Hereinafter the appellants will be referred to as the Regents and the appellees as the Fund Manager.

## STANDARD OF REVIEW

On appeal from summary judgment, the court of appeals must view the evidence in the light most favorable to the party against whom summary judgment was entered. *Cecil Lawter Real Estate School, Inc. v. Town & Country Shopping Center Co., Ltd.*, 143 Ariz. 527, 694 P.2d 815 (App. 1984). In this case, though, neither party argues that there are any issues of materi-

---

**2.** A second claim, that the Fund Manager and its Administrator be required to pay over certain monies designated as "excess contributions" was abandoned by the Regents in the superior court proceeding and will not be discussed on appeal.

al fact which would preclude the entry of summary judgment in its favor. Each argues that it was entitled to summary judgment as a matter of law.

■■■ The Fund Manager raised several issues in its motion, any one of which it argued would support summary judgment in its favor. The trial court granted summary judgment for the Fund Manager without stating the basis for its ruling. An explanatory statement of grounds for ruling aids the appearance of justice by assuring the parties that judicial decisions are rationally based. It also aids this court in its review. However, the court of appeals will affirm the trial court's decision if it is correct for any reason. *U.S. Insulation, Inc. v. Hilro Const. Co., Inc.,* 146 Ariz. 250, 705 P.2d 490 (App.1985); *Rancho Pescado, Inc. v. Northwestern Mut. Life Ins. Co.,* 140 Ariz. 174, 680 P.2d 1235 (App. 1984). This is so even where a summary judgment has been entered. *People ex rel. Babbitt v. Green Acres Trust,* 127 Ariz. 160, 618 P.2d 1086 (App.1980).

*Was the Regents' Suit Barred Due to Failure to Seek Timely Review Pursuant to the Administrative Review Act?*

■■ We first consider the Fund Manager's argument that the Regents' suit was jurisdictionally defective because the Regents did not seek timely review of the Fund Manager's decision to transfer the security guards out of the System as provided in Arizona's Administrative Review Act at A.R.S. § 12–901 *et seq.* The Fund Manager is an administrative agency of the state. *Fund Manager v. Arizona Department of Administration,* 151 Ariz. 93, 725 P.2d 1127 (App.1986). A.R.S. § 12–902(B) provides that parties to a proceeding before an administrative agency shall be barred from obtaining judicial review of an administrative decision unless review of the decision is sought within the time and in the manner provided under the Act. A.R.S. § 12–904 provides that "[a]n action to review a final administrative decision shall be commenced by filing a complaint within thirty-five days from the date when a copy

of the decision sought to be reviewed is served upon the party affected."

The Fund Manager points out that it notified the University of its decision to transfer the security guards out of the System by its letter dated November 10, 1983, and that the University took no legal action until the Regents filed this complaint in special action on December 2, 1985. The Fund Manager contends that the superior court's summary judgment ruling against the Regents should be upheld on the ground that the procedure for review under the Administrative Review Act was not followed.

We do not find such preclusion, because we conclude that the Administrative Review Act did not come into play in this case. The action taken by the Fund Manager was not a "decision" within the meaning of the Act.

The requirement of seeking judicial review under A.R.S. § 12–902 applies only to a "decision" within the meaning of the Act. A.R.S. § 12–901(2) defines "decision" as "any decision, order or determination of an administrative agency rendered in a case which affects the legal rights, duties or privileges of persons *and* which terminates the proceeding before the administrative agency." (Emphasis added.) *See also Arizona Commission of Agriculture & Horticulture v. Jones,* 91 Ariz. 183, 370 P.2d 665 (1962). In this case there is no indication from the record that any "case" or "proceeding" was pending before the Fund Manager when it decided that security guards should not be System members and that they should be transferred out of the System. Therefore, there was no requirement that judicial review under the Act be sought.

Moreover, it is the Local Board that is vested with authority under the statute to make the determination of eligibility in the first instance. A.R.S. § 38–847(D)(1). We are not persuaded that the power bestowed upon the Fund Manager pursuant to A.R.S. § 38–848(G)(9) to do all acts necessary for protection of the fund's investments would allow it to divest the Local Board of its

authority to make the initial determination of eligibility should it choose to do so.

■ We note that the Regents filed a complaint for special action seeking to prove that the Fund Manager was failing to perform a duty required by law, i.e.— that it was failing to accept the Local Board's determination that the security guards were eligible for membership in the System. A complaint for special action is the proper suit to file when a party is raising the question of whether a defendant is failing to perform a duty required by law. *See* Rule 3(a), Rules of Procedures for Special Actions, 17B A.R.S. We find no jurisdictional impediment to the Regents' filing of a special action complaint to seek judicial review of whether the Fund Manager should be compelled to accept the Local Board's determination that the security guards were eligible for membership in the System.

We next must determine whether or not the Local Board acted within its jurisdiction in this particular instance when it found the campus security guards eligible. As we indicated previously, the legislature did bestow upon the Local Board the power to make initial decisions regarding eligibility. A.R.S. § 38–847(D)(1) provides:

(D) Except as limited by subsection E of this section, a local board shall have such powers as may be necessary to discharge the following duties:

1. To decide all questions of eligibility and service credits, and determine the amount, manner and time of payment of any benefits under the system.

The legislature authorized the Fund Manager to challenge a determination made by the Local Board by applying for rehearing with the Local Board and then for judicial review in the manner set forth by the Administrative Review Act. The statute, A.R.S. § 38–847, provides:

(H) A claimant or the fund manager may apply for rehearing before the local board within the time period prescribed in this subsection. An application for rehearing shall be filed in writing with a member of the local board or its secretary within sixty days thereafter:

\* \* \* \* \* \*

2. The applicant-fund manager receives notification of the local board's original action by certified mail or by receipt of written directions from the local board pursuant to its original action, whichever occurs first.

\* \* \* \* \* \*

(J) Decisions of local boards are subject to judicial review pursuant to Title 12, Chap. 7, art. 6.

When the Local Board's decision is made in the proper manner and is "not inconsistent with the provisions of the System," its decision is final if timely review is not sought. As stated in subsection (G):

(G) Any action by a majority vote of the members of a local board which is not inconsistent with the provisions of the system shall be final, conclusive and binding upon all persons affected by it unless a timely application for rehearing or appeal is filed as provided in this article.

The whole thrust of the Regents' suit against the Local Board was that it had made the eligibility determination which it had been authorized by statute to make, that the Fund Manager failed to seek review in the manner provided by the statute, that the Fund Manager is now precluded from challenging the decision of the Local Board, and that the court should direct the Fund Manager to follow the directions of the Local Board in reinstating the security guards which had been determined to be eligible.

The Fund Manager argues that it was not required to follow the statutory procedure for obtaining direct review of the Local Board's decision. It argues that the Local Board's decision did not bind it because the Local Board's action was "inconsistent with the provisions of the System." The Fund Manager points out that subsection (D), which granted authority to the Local Board to determine eligibility questions, provided that the Local Board's pow-

**156**

ers were limited by subsection (E). Subsection (E) provides:

(E) A local board shall have no power to add to, subtract from, modify or waive any of the terms of the system, change or add to any benefits provided by the system or waive or fail to apply any requirement of eligibility for membership or benefits under the system.

The Fund Manager argues that when the Local Board made its determination that the campus security guards were eligible, it exceeded its authority by making a decision that would "waive or fail to apply any requirement of eligibility for membership or benefits under the system."

█ The Regents suggest in their reply brief that the very issue of whether the Local Board exceeded its powers was subject to the requirement of timely review under subsections (H) and (J) of the statute. The Regents provide no support for this contention, and we find it to be in error. It is well-settled that administrative decisions which go beyond an agency's statutory power are vulnerable for lack of jurisdiction and may be questioned in a collateral proceeding. *Tucson Warehouse & Transfer Co., Inc. v. Al's Transfer, Inc.,* 77 Ariz. 323, 271 P.2d 477 (1954); *Dallas v. Arizona Corporation Commission,* 86 Ariz. 345, 346 P.2d 152 (1959). *Accord* 2 Am.Jur.2d *Administrative Law* §§ 188, 192, 482 (2d ed. 1962). Since a decision made in excess of jurisdiction may be set aside in a collateral attack, the question of whether the decision is in fact in excess of jurisdiction may also be made in that same collateral proceeding.

█ Having determined that the Fund Manager may attack the Local Board's jurisdiction in this special action, we must decide whether the Local Board did, in fact, exceed its jurisdiction when it concluded that the campus security guards were eligible for membership in the System. The Fund Manager argues that in determining that the campus security guards were eligible for membership, the Local Board failed to apply the eligibility requirements that members belong to one of the qualifying groups of employees enumerated in the

statute. The Fund Manager points out that "college campus policemen" are among the expressly listed groups of employees eligible for membership, but that "security guards" are not.

The record in this case discloses that the Local Board found the security guards to be eligible for membership solely because it found that they had been "regularly assigned to hazardous duty." It made no finding that the security guards were "college campus policemen" or that they fit within any other of the enumerated categories of employees eligible for membership. If the statutory requirement for membership requires that a public safety employee both be "regularly assigned to hazardous duty" and belong to one of the enumerated categories of employees, then the Local Board clearly acted outside of its powers by failing to apply a requirement of eligibility for membership. It would follow that since security guards are not among the categories listed, they could be found eligible only by a factual determination that they fit within one of the enumerated categories.

The original legislation which created the Public Safety Personnel Retirement System defined "member" in A.R.S. § 38–842(15) as "any employee" who, among other things "is either a full-time paid municipal policeman, fireman, or a patrolman employed by the state highway patrol ..., or *an employee included in a group designated as eligible employees under a joinder agreement entered into by their employer after July 1, 1968.*" (Emphasis added.) "Employee" was then defined in subsection (11) as:

11. "Employee" means any person who is a member of a group of public safety personnel regularly assigned to hazardous duty, including groups of municipal policemen, municipal firemen, state highway patrolmen, county sheriffs and deputies, fish and game wardens, penitentiary guards, college campus policemen, and special agents, and excluding persons compensated on a contractual or fee basis.

*See* Laws 1968, Ch. 85, § 1.

On its face, this statute is unclear whether an "employee" is a member of *any*

public safety personnel regularly assigned to hazardous duty and the groups listed are merely descriptive of such groups, or whether the expressly enumerated groups are exclusive. In answering this question, we are guided by the doctrine of "expressio unius est exclusio alterius." This doctrine provides that the legislature's expression of one or more items of a class is to be interpreted as an intent to exclude all items of the same class that are not expressed. *See, e.g., Pima County v. Heinfeld,* 134 Ariz. 133, 654 P.2d 281 (1982); *Southwestern Iron and Steel Industries, Inc. v. State,* 123 Ariz. 78, 597 P.2d 981 (1979).

■ Additionally, we note that in subsection (12)(d) of the statute, the legislature enumerated another group of items and used the language "including but not limited to" to make it clear that other items of the same class were not to be excluded. *See* Laws 1968, Ch. 85 § 1. We find this to be a further indication that the legislature intended the enumerated groups of employees in Subsection (11), to be exclusive since it chose not to place the phrase "including but not limited to" in that subsection but used it in another. Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded. *Banks v. Arizona State Board of Pardons & Paroles,* 129 Ariz. 199, 203, 629 P.2d 1035, 1039 (App.1981).

■ In reviewing the legislative amendments to A.R.S. § 38–842, we find that the legislature has made frequent changes in the language of the relevant definitions given therein. We do not find, though, that the legislature has ever deviated from its intention that the members brought into the System through joinder agreements be among *expressly listed groups of employees* who are regularly assigned to hazardous duty. "Security guards" have never been one of the expressly listed groups. In fact, we believe it has become even more evident from subsequent clarifications in the statutory definitions provided in A.R.S. § 38–842 that the legislature has always intended the groups of employees it enumerated to be exclusive. In 1980 the legislature added a definition for "eligible groups," stating that "eligible groups" meant "only" the several categories of employees which were then expressly enumerated. Laws 1980, Ch. 146, § 1. Subsequent legislation which clarifies the statutory scheme, although not necessarily controlling, is strongly indicative of the legislature's original intent. *Police Pension Board of City of Phoenix v. Warren,* 97 Ariz. 180, 398 P.2d 892 (1965); *Fund Manager, Public Safety Personnel Retirement System v. Tucson Police and Fire Public Safety Personnel Retirement Systems Board,* 147 Ariz. 1, 708 P.2d 92 (App.1985).

■ For all of the above stated reasons, we find that it was necessary for the Local Board to determine not only that the security guards in question were "regularly assigned to hazardous duty" but also that they were included within one of the expressly enumerated groups of eligible employees. The Local Board had no power to declare the security guards eligible without determining that they would fall within one of the eligible groups. Since the Local Board ignored this requirement, its decision was void and created no duty on the part of the Fund Manager to comply with it. Hence, the superior court was correct in denying the Regents' special action complaint.

*Is The Superior Court's Decision Correct For The Additional Reason That The "Security Guards" Are Not "College Campus Policemen?"*

The Fund Manager has argued at considerable length both in the trial court and on appeal that the personnel designated by the University as "security guards" cannot be considered "college campus policemen." We do not reach this issue because we have already found support for the superior court's ruling on the special action as stated above. The Local Board must make this determination should it choose to do so.

■ For various reasons, we believe it would be inappropriate for this court to determine in this appeal whether any of the

University's "security guards" could be considered to be "college campus policemen." The Local Board did not decide this issue. While the Local Board did gather some evidence which pointed out differences between security guards and campus policemen, it should not be precluded from gathering additional evidence should it choose to examine this issue. We note there is some evidence in the record that some of the differences between the University's security guards and its campus police officers did not exist at the time that the security guards under question were brought into the System. We also note that a factual issue exists in the record as to whether the Fund Manager had knowledge that the security guards had been allowed to join the System. The parties have not briefed whether these factors would have any impact upon whether the security guards should be considered college campus policemen. We express no opinion on these issues. Because the determination regarding the University guards has not been made by the Local Board, it was not before the superior court. We are bound by the record sent up from the superior court. *City of Phoenix v. Superior Court*, 110 Ariz. 155, 515 P.2d 1175 (1973).

The issue of whether security guards may be considered college campus policemen was not raised by the Regents in its special action complaint and has never been addressed by the Local Board. Although the issue was raised by the Fund Manager as a defense to the special action, we do not find that the Fund Manager sought affirmative relief from the superior court. The issue is not in proper posture to be determined by a court of review.

Finally, we find it significant that the security guards were never made a party to the judicial proceeding. The Fund Manager has suggested that the security guards might be indispensable parties to the proceeding. The test used by the Arizona court in determining whether a party is indispensable is as follows:

'... Indispensable parties are those who have such an interest in the subject matter that a final decree cannot be made without either affecting their interest or leaving the controversy in such condition that a final determination may be wholly inconsistent with equity and good conscience. The test of indispensability therefore is whether the absent person's interest in the controversy is such that no final judgment or decree can be entered which will do justice between the parties actually before the court, without injuriously affecting the rights of others not brought into the action.'

*Bolin v. Superior Court*, 85 Ariz. 131, 134, 333 P.2d 295, 297 (1958), (quoting Barron and Holtzoff, *Federal Practice and Procedure*, Vol. 2, § 512, pp. 58 and 59). We conclude that the security guards would be indispensable parties to any litigation that would determine whether they have a right to membership in the System. A determination of whether these security guards may be considered "college campus policemen" would bear on whether the security guards are members of the System. This court will not consider this issue in a suit which does not name the security guards as parties.

For the reasons expressed in this opinion, we affirm the superior court's summary judgment ruling which denied the Regents' complaint for special action relief. Our opinion contains no determination of the issue of whether any of the security guards in this case could be considered to be "college campus policemen."

## ATTORNEYS' FEES ON APPEAL

The appellees request an award of attorneys' fees pursuant to A.R.S. § 12–341.01 which the court awards in an amount to be determined after the appellees' compliance with Rule 21(c) of the Arizona Rules of Civil Appellate Procedure.

Affirmed.

CORCORAN, P.J., and GREER, J., concur.

NOTE: The Honorable Robert J. Corcoran, Justice of the Arizona Supreme Court, has been authorized by Administrative Order No. 89–3 of the Chief Justice, to participate in the resolution of this case which was

previously assigned to him as a judge of this Court or to his department before Thursday, January 5, 1989.