834 P.2d 832

The STATE of Arizona, ex rel. Richard M. ROMLEY, Maricopa County Attorney, Petitioner,

v.

SUPERIOR COURT of the State of Arizona, in and for the COUNTY OF MARICOPA, the Honorable Pamela J. Franks, a judge thereof, Respondent Judge,

JUVENILE SUBJECT TO MARICOPA COUNTY JUVENILE ACTION NO. JV–122463, Real Party in Interest.

No. 1 CA–SA 92–040.

Court of Appeals of Arizona, Division 1, Department C.

July 21, 1992.

110

Richard M. Romley, Maricopa County Atty. by Linda Van Brakel, Deputy County Atty., Phoenix, for petitioner.

Calvo, Brown & Saint by Daniel Saint, III, Phoenix, for real party in interest.

## OPINION

CONTRERAS, Presiding Judge.

After conducting a hearing on the state's motion to transfer a juvenile for prosecution as an adult, the juvenile court ordered that the hearing be continued for six months to give the juvenile a chance to improve his behavior before the court issued its decision. The state sought special action review of the order. We accepted jurisdiction and ordered the juvenile court to immediately determine whether the juvenile was to be transferred for prosecution as an adult. We stated that a written decision would be issued in due course. This is that decision.

## FACTUAL AND PROCEDURAL HISTORY

The juvenile initially came to the attention of the juvenile justice system when he was fifteen and a half years old. In the sixteen months that followed, he received seven delinquency referrals.[1] His first two referrals, which involved weapons misconduct and auto theft, did not result in the filing of delinquency petitions.[2] Delinquency petitions were filed in conjunction with his third and fourth referrals, both of which stemmed from incidents in which he fled from the police in stolen automobiles. The second of these incidents ended with the juvenile crashing an automobile into a wall.

The juvenile admitted committing the offenses of attempted auto theft and unlawful use of a means of transportation in connection with these incidents. He was adjudicated delinquent and was placed on the Home Detention Program pending the disposition hearing. He repeatedly violated the program's requirements and eventually ran away from home and failed to appear for the hearing.

As a result of his misconduct on the Home Detention Program, the juvenile was not considered for the Juvenile Intensive Probation Program. See A.R.S. §§ 8–271 to –278 (1989). After he was apprehended, he was committed to the Arizona Department of Youth Treatment and Rehabilitation ("the Department"), which ordered that he be confined to the Adobe Mountain Juvenile Institution. He was paroled from Adobe Mountain in less than two months and absconded from parole one month later. His parole was revoked, and he was again confined at Adobe Mountain.

While the juvenile was confined, the Department received a referral concerning a fourth auto theft that he had allegedly committed when he was on the Home Detention Program. After one week's confinement, the juvenile was reinstated on parole. He was subsequently referred to the Department for giving false informa-

---

1. A delinquency referral (or complaint) is "a report prepared by a law enforcement agency and submitted to the court, alleging that a juvenile has violated the criminal law." Ariz.Rev. Stat.Ann. ("A.R.S.") § 8–230(4) (Supp.1991); *Maricopa County Juvenile Action No. J–81405–S,* 122 Ariz. 252, 594 P.2d 506 (1979).

2. A delinquency petition is "a document, filed by the county attorney, seeking to have a juvenile adjudicated a delinquent child." A.R.S. § 8–230(5).

tion to a police officer. Two months after he was reinstated on parole, he absconded. He then committed his fifth offense involving auto theft, and his parole was revoked. He was confined at Adobe Mountain and was paroled in less than three months.

The state filed a motion to transfer the juvenile to adult court for criminal prosecution of the last auto theft offense, and a combined adjudication and transfer hearing was held. At the adjudication stage of the hearing, the juvenile court found that there was probable cause to believe that the juvenile had committed the offense. The juvenile testified during the transfer stage of the hearing. At the time, he was seventeen years and two months old, and he had been on parole for almost a month. He told the court that he was employed and that he was trying to do well and to obey the law. He said that he had appeared for the hearing because he understood the seriousness of the state's request and he was afraid of being transferred to the court's adult division. The juvenile's mother also testified, and she confirmed that the juvenile was employed and that he was not violating the law. After hearing this testimony, the court continued the transfer hearing for one week to obtain a report from the juvenile's parole officer concerning the juvenile's conduct since his latest parole.

The juvenile attended the continued hearing. His parole officer appeared and advised the court that the juvenile had been doing well for the five weeks that he had been on parole. He recommended against transfer. The juvenile court noted that the offense marked the juvenile's fifth referral for auto theft and that the juvenile had fled from the police in stolen motor vehicles on more than one occasion. It also noted that the juvenile had a pattern of absconding from parole. It stated that if it had to make the transfer decision that day, it would transfer the juvenile for the protection of the public. However, it continued the matter for six months and gave the

juvenile the following explanation for its action:

> The only reason I'm putting this off is because I'm hoping that, in fact, your folks and [your parole officer] are right, that there's been a change in you.
>
> I've been impressed that you've come to court twice. You told me last week that you knew this was important, and I hope that's accurate. And if, in fact, we finally have your attention, I'm going to give you one last chance. But you have to understand, if you blow it at all you will be transferred on these charges. Probable cause has already been found and I will transfer you unless I get 100 percent compliance over the next six months.

In response to the state's objection to the continuance, the juvenile court said that it was in society's interest as well as the juvenile's "to see if by holding the issue of transfer over his head for six months we can get compliance." The juvenile was released to the custody of his parents subject to a number of conditions, including weekly contact with his parole officer. The state subsequently filed this special action.

## SPECIAL ACTION JURISDICTION

■ Special action relief is appropriate where a judge has exceeded his or her legal authority and the petitioner does not have a plain, speedy, and adequate remedy by appeal. Ariz.R.P.Spec.Act. 1(a), 3. We accepted jurisdiction in the present case because we concluded that the juvenile court did not have the authority to continue the transfer hearing for six months and because an order continuing a transfer hearing is not appealable since it is not a final order of the juvenile court. *See* A.R.S. § 8–236 (1989); *Maricopa County Juvenile Action No. JT–295003*, 126 Ariz. 409, 616 P.2d 84 (App.1980). We also accepted jurisdiction because the juvenile court's authority to order such a continuance is a matter of statewide importance that turns upon a question of law rather than upon disputed issues of fact.[3] *Lewis v. Warner*, 166 Ariz. 354, 802 P.2d 1053 (App.1991).

---

**3.** The state supported its argument that this was an issue of statewide importance by citing pending cases in which juvenile court judges had continued transfer hearings for similar reasons.

## DISCUSSION

■ Rule 14 of the Rules of Procedure for the Juvenile Court governs transfer hearings.[4] The state argues that the rule requires the juvenile court to decide the transfer issue on the basis of the evidence presented at the hearing and that it does not authorize the court to order a lengthy continuance to obtain evidence concerning the juvenile's subsequent behavior. The juvenile responds that the juvenile court has the discretion to order such a continuance even though the rule does not specifically authorize it to do so. He argues that this is in keeping with the juvenile justice system's goal of rehabilitation, which requires the court to focus on a juvenile's future conduct.

We recognize the concerns that prompted the juvenile court to order the continuance in the present case. The transfer report noted that the juvenile had never been placed on probation or intensive probation and that he had received very little treatment from the system. The juvenile's parole officer advised against the transfer because he believed that the juvenile's attitude was improving and that he would be amenable to treatment in the remaining months before he turned eighteen and the juvenile court lost jurisdiction over him. *See* A.R.S. § 8–246 (Supp.1991).

At the same time, it could reasonably be inferred from the record that the juvenile had demonstrated that he knew how to manipulate the system and that he was unlikely to make any serious effort to rehabilitate himself unless additional pressure was applied. We acknowledge and appreciate the juvenile court's desire to use the threat of transfer to provide the juvenile with the motivation that he needed to change his behavior. However, we conclude that Rule 14 does not contemplate, let alone authorize, continuing a transfer hearing for an extended period of time in order to take the juvenile's future conduct into consideration.

■ Rule 14 requires the juvenile court to consider several factors in deciding whether to transfer a juvenile for criminal prosecution as an adult. The juvenile's future conduct is not one of the factors listed. Although the rule also permits the juvenile court to consider "any other factors which appear to be relevant to the determination of the transfer issue," we conclude that the "other factors" referred to are those that exist at the time of the hearing. It appears to this court that if the Arizona Supreme Court had intended to give the juvenile court the discretion to continue the transfer hearing so that it could consider the juvenile's subsequent conduct, it would have included a specific provision to this effect in the rule.

We also find support for our conclusion that Rule 14 does not authorize the type of continuance that was ordered in this case in Rule 6.1 of the Rules of Procedure for the Juvenile Court. In the present proceeding, the juvenile court ordered the six-month continuance on January 28, 1992. At that time, neither Rule 14 nor any of the other juvenile court rules addressed the subject of continuances. Rule 6.1, which became effective on March 1, 1992, does address that subject. The rule's purpose is to insure that delinquency and transfer cases are resolved promptly. In accordance with this goal, it limits the number and length of continuances that may be granted in such cases. It provides that the juvenile court may grant one continuance of no longer than thirty days upon the stipulation of all of the parties if the juvenile is not in custody. Rule 6.1(h)(3). It further provides that the juvenile court may only grant a motion for continuance filed by one of the parties "upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Rule 6.1(h)(2). The continuance may be granted

---

After we accepted jurisdiction in this special action, the state sought special action relief from a similar order entered by a different juvenile court judge in another case. We accepted jurisdiction and granted relief in that case as well, and we will issue a memorandum decision in the case today. *See State v. Superior Court,* 1 CA–SA 92–120 (App. July 21, 1992).

**4.** For ready reference, we have set forth the text of Rule 14 following this decision.

only "for so long as is necessary to the interests of justice." *Id.*

We interpret court rules in accordance with the principles of statutory construction. *State v. Superior Court,* 168 Ariz. 167, 812 P.2d 985 (1991). Subsequent rules that clarify a procedural scheme, while not necessarily controlling, are strongly indicative of the supreme court's original intent. *See Arizona Bd. of Regents v. State of Arizona Pub. Safety Retirement Fund Manager Adm'r,* 160 Ariz. 150, 771 P.2d 880 (App.1989); *Fund Manager v. Tucson Police and Fire Pub. Safety Personnel Retirement Sys. Bd.,* 147 Ariz. 1, 708 P.2d 92 (App.1985). Rule 6.1 embodies a policy of expeditiously resolving transfer cases. In light of this policy and of the rule's express restrictions on continuances, we do not believe that the supreme court intended to give the juvenile court discretion under Rule 14 to delay making a transfer decision and to place the juvenile on what amounted to probation for a period of six months.

For the foregoing reasons, we accepted special action jurisdiction by previous order and directed the juvenile court to make the transfer decision immediately.

McGREGOR and FIDEL, JJ., concur.

### Rule 14. Transfer Hearing; Order; Further Proceedings

(a) The transfer hearing shall be conducted in two phases: first, the determination of probable cause and second, the determination of transfer. The two phases may be heard consecutively on the same date or may be heard on separate dates, in the discretion of the court. The child may waive an evidentiary hearing on either phase of the transfer hearing.

(b) The probable cause phase of the hearing shall be conducted in accordance with Rules 5.3 and 5.4(c), Arizona Rules of Criminal Procedure. Objections to evidence on the ground that it was acquired by unlawful means shall be inapplicable in the probable cause hearing. The court shall find whether there is probable cause to believe that the offense has been committed and that the child committed it. If the court finds that probable cause does not exist, the court shall dismiss the matter.

(c) If the court determines that there is probable cause to believe that the offense has been committed and that the child committed it, the court shall then determine whether the public safety or interest would best be served by the transfer of the child for criminal prosecution. In deciding whether the jurisdiction of the juvenile court should be waived and the child transferred for criminal prosecution, the court shall consider the following factors:

(1) the seriousness of the alleged offense and whether it was committed in an aggressive, violent, premeditated or willful manner;

(2) whether the alleged offense was against person or against property, and whether personal injury resulted;

(3) the sophistication and maturity of the child as determined by consideration of the child's age, intelligence, education, environment, emotional attitude and pattern of living;

(4) the child's physical, mental and emotional condition;

(5) the record and previous history of the child, including previous contacts with juvenile courts and law enforcement agencies in this and other jurisdictions, prior periods of probation in any court and their results, and any prior commitments to juvenile residential placements and secure institutions;

(6) whether the child has previously been transferred for criminal prosecution in this or any other state;

(7) the prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the child by the use of services and facilities currently available to juvenile court; and

(8) any other factors which appear to be relevant to the determination of the transfer issue.

(d) At the conclusion of the transfer hearing, if the court orders the child transferred for criminal prosecution to the appropriate court having jurisdiction of the

offense, the court shall state the reasons for such action by minute entry or written order.

 (e) When a transfer has been ordered, the child shall be transferred to the custody of an appropriate law enforcement officer, released on bail, if the offense is bailable, or released on his own recognizance.

(f) If the child is not ordered transferred, the court shall hear and dispose of the case or assign it to another judge, court commissioner or referee for hearing.

Amended Dec. 23, 1983, effective March 1, 1984.