204 P.3d 399

**Shannon BACKUS, a married woman, Plaintiff/Appellant,**

v.

**STATE of Arizona, Defendant/Appellee.**

**Rosemary Johnson, on behalf of herself as biological mother of Vickie Johnson, deceased, and on behalf of all statutory beneficiaries of Vickie Johnson, deceased, Plaintiff/Appellant,**

v.

**State of Arizona, a political entity; Arizona Department of Corrections, an agency of the State of Arizona, Defendants/Appellees.**

**Nos. 1 CA–CV 07–0640, 1 CA–CV 07–0671.**

Court of Appeals of Arizona, Division 1, Department A.

July 17, 2008.

Review Granted Dec. 4, 2008.

---

**6.** The Honorable Norman J. Davis, Judge of the Maricopa County Superior Court, was assigned by the Chief Justice of the Arizona Supreme Court to participate in the disposition of this matter pursuant to Ariz. Const. art. 6, § 3.

Cates, Hanson, Sargeant & Rakestraw, P.L.C. by Leslie L. Rakestraw, Phoenix, Attorneys for Plaintiff/Appellant Backus.

Terry Goddard, Attorney General by Daniel P. Schaack, Assistant Attorney General, Phoenix, Attorneys for Defendant/Appellee.

Robbins & Curtin, P.L.L.C. by Joel B. Robbins, Phoenix, Attorneys for Plaintiff/Appellant Johnson.

Terry Goddard, Attorney General by Richard P. Broder, Assistant Attorney General, Tucson, Attorneys for Defendants/Appellees.

Herbert Schenk P.C. by Richard M. Gerry, Phoenix, Amicus Curiae on behalf of the Arizona Trial Lawyers Association.

WINTHROP, Judge.

¶ 1 In these consolidated wrongful death cases,[1] we interpret and apply the statutory language of Arizona's notice of claim statute, Arizona Revised Statutes ("A.R.S.") section 12–821.01 (2003). In each of these cases, the State successfully contended that the claim letters submitted on behalf of the plaintiffs did not contain sufficient facts to support the specific amount demanded in settlement. As discussed below, we hold that the respective claim letters submitted on behalf of the plaintiffs complied with the statutory mandate. Accordingly, the orders of the respective trial courts dismissing the actions are reversed, and the cases are remanded for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

### A. The Backus Case

¶ 2 On October 18, 2005, Gerald Dunford died after suffering a sustained infection.

---

1. Because these separate appeals raise essentially the same legal issues, we exercise our discretionary authority to consolidate them for appellate disposition. *See* ARCAP 8(b).

Dunford was incarcerated by the Arizona Department of Corrections ("ADOC") at the time of his death and during the relevant period prior to his death.

¶3 On March 17, 2006, Dunford's daughter, Shannon Backus, sent a notice of claim letter to the State pursuant to A.R.S. § 12–821.01. In the letter, Backus provided a factual summary and asserted that ADOC had been negligent in its provision of medical care to Dunford. With respect to the damages claim and settlement demand, as required by the statute, Backus's letter stated:

> As he was born on January 15, 1947, Gerald Michael Dunford was only fifty-eight years old at the time of his death. According to the mortality tables, a person between the ages of 58 and 59 has a life expectancy of 23.6 years. For the sole purpose of putting a damage amount on the life of Gerald Dunford, Mrs. Backus is claiming $21,500 per year for the loss of her father. At 23.6 years, this is a total of $507,400.
>
> As a result of this unfortunate incident, Mrs. Backus has authorized me to make a claim upon the Maricopa County Sheriff's Office [2] in the amount of $500,000.

(Footnote added.)

¶4 The State responded to the claim letter on July 25, 2006. In its letter, the State noted that because it had not responded to Backus's claim letter within sixty days pursuant to A.R.S. § 12–821.01, the claim was deemed denied and Backus was free to proceed with a lawsuit against the State. The State requested, however, that Backus not initiate such an action prior to the October 18, 2006 statute of limitations deadline in order to allow the State additional time to investigate, and possibly resolve, her claim. The State's risk management representative did not ask for any additional information concerning the facts allegedly supporting the liability claim, other than to request a signed release authorizing the State to examine Dunford's medical records. With respect to the damages claim and settlement demand, the State did not request any specific or additional factual information, other than proof that Backus had "standing" to bring this claim under Arizona's wrongful death statute, A.R.S. § 12–612 (2003). Presumably, the State was seeking some documentation that Backus was indeed Dunford's daughter. The record on appeal does not reflect any response from Backus or her attorneys, or any further requests for additional information from the State.

¶5 In October 2006, Backus filed a complaint in the trial court alleging that the State's negligence in providing medical treatment to Dunford proximately caused his death. The State moved to dismiss Backus's second amended complaint [3] for failure to comply with A.R.S. § 12–821.01(A) because, it argued, Backus had not stated in her notice of claim any facts to support the specific amount for which she was willing to settle her claim. The court granted the motion, ruling that Backus's notice of claim did not satisfy the requirements of A.R.S. § 12–821.01(A). Backus timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## B. The Johnson Case

¶6 Vickie Johnson was a 35–year–old mother of six children. At the time of her death, she was serving a 2.5–year prison term in ADOC. Sometime in the beginning of her second year of incarceration, Vickie became seriously ill and began requesting medical attention. Approximately fourteen months into her sentence Vickie was taken to a hospital for medical treatment. She arrived at the hospital in a comatose state in which she remained until her death approximately four months later on March 16, 2006.

¶7 On May 31, 2006, the attorney for Rosemary Johnson ("Johnson"), Vickie's mother, filed a notice of claim with the State on behalf of herself and Vickie's six biological children pursuant to A.R.S. § 12–821.01. The notice of claim stated the following:

2. Although Backus's notice of claim stated she was making a claim on the Maricopa County Sheriff's Office, the State has never argued that the claim letter was defective for that reason.

3. Backus twice amended her complaint in response to the State's motions to dismiss on grounds not relevant to this appeal.

Vickie Johnson had been in the custody of the Arizona Department of Corrections since September 17, 2004. While incarcerated, Ms. Johnson became ill and asked to be seen by the medical staff. Upon information and belief, there was a substantial delay in medical care provided to Ms. Johnson, which caused Ms. Johnson's condition to deteriorate dramatically. Ms. Johnson became seriously ill in November of 2005 and was taken to Banner Estrella Hospital for emergency medical treatment. Upon further information and belief, Vickie Johnson suffered brain damage due to lack of oxygen and remained in a persistent vegetative state during her entire hospital stay. She was eventually taken to a long term care facility, where she remained until her death on March 16, 2006.

Ms. Johnson's cause of death was bilateral pulmonary edema and congestion with bronchopneumonia. Had Ms. Johnson received the proper medical care she needed, her death and needless suffering would have been avoided. Ms. Johnson was scheduled to be released from custody in just a few short months, and leaves behind six (6) children[.]

This Notice of Claim is for the wrongful death of Vickie Johnson, caused by the negligence of the Arizona Department of Corrections and its medical providers. I have been given authority by the statutory beneficiaries of Ms. Johnson to resolve this matter in the amount of $2,000,000.00.

¶ 8 On January 25, 2007, having received no response to the notice of claim from the State, Johnson, on behalf of herself and Vickie's six children, filed a complaint for negligence or gross negligence and wrongful death. On February 16, 2007, the State filed its answer, denying liability, but not raising any specific defect in the notice of claim filed by Johnson. On February 26, 2007, the Arizona Supreme Court's opinion in *Deer Valley Unified School District No. 97 v. Houser*,

214 Ariz. 293, 152 P.3d 490 (2007), was published, and on March 6, 2007, the State filed a motion to dismiss on the basis that "the [n]otice of [c]laim fail[ed] to comply with A.R.S. § 12–821.01[ (A) ], as interpreted by the Arizona Supreme Court in *Deer Valley* ..., in that it fail[ed] to contain facts supporting the specific amount for which the claim [could] be settled with the State."

¶ 9 The trial court granted the State's motion to dismiss without comment and denied Johnson's motion for reconsideration and clarification also without further elaboration. The trial court then entered its judgment against Johnson, and Johnson timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## II. NOTICE OF CLAIM STATUTE

¶ 10 Section 12–821.01(A) provides:

Persons who have claims against a public entity or a public employee shall file claims with the person or persons authorized to accept service for the public entity or public employee as set forth in the Arizona rules of civil procedure within one hundred eighty days after the cause of action accrues. *The claim shall contain facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed. The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.* Any claim which is not filed within one hundred eighty days after the cause of action accrues is barred and no action may be maintained thereon.

(Emphasis added.)

¶ 11 These statutory requirements "allow the public entity to investigate and assess liability, ... permit the possibility of settlement prior to litigation, and ... assist the public entity in financial planning and budgeting."[4] *Deer Valley*, 214 Ariz. at 295,

---

4. While these bases underlying the statute have long been recognized, we do not find in the records of these cases any information, let alone affidavits, indicating: (1) the percentage of wrongful death or personal injury cases the State settles based upon information contained in claim letters; (2) the fact and manner in which the State utilizes information contained in the claim letters for "financial planning and budgeting"; (3) the interaction with any primary or excess insurers relative to this process; and (4) that, but for the lack of allegedly critical factual information concerning these damages claims,

¶ 6, 152 P.3d at 492 (citation omitted). Failure to comply with the statute bars a plaintiff from pursuing the underlying cause of action. *Salerno v. Espinoza,* 210 Ariz. 586, 588, ¶ 7, 115 P.3d 626, 628 (App.2005) (citations omitted) (stating that compliance with the notice provision of A.R.S. § 12–821.01(A) is a mandatory and essential prerequisite to maintaining an action against a public employee); *Crum v. Superior Court,* 186 Ariz. 351, 353, 922 P.2d 316, 318 (App.1996) (holding that failure to include all claims and settlement amount in notice letter would bar claim). Strict compliance relative to the specific settlement amount demanded is required. *Deer Valley,* 214 Ariz. at 296, ¶ 9, 152 P.3d at 493 ("[It] simply requires that claimants identify the specific amount for which they will settle ....").

¶ 12 In summary, the purpose of the notice of claim statute is to (1) put the governmental entity on notice of a claim; (2) require the claimant to set forth facts concerning the event or events allegedly giving rise to liability sufficient to allow the government to identify and investigate the occurrence; (3) require the claimant to set forth a cognizable damages claim; and (4) identify an amount of money the claimant will accept to resolve the claim before filing suit.

## III. ANALYSIS

### A. *Standard of Review*

¶ 13 In the *Johnson* case, the State, in presenting its motion to dismiss, attached the notice of claim filed by Johnson and a copy of the *Deer Valley* decision. Although the motion to dismiss relied entirely on these two documents, neither document was part of the complaint. While the trial court did not elaborate on its reasons for granting the motion to dismiss, it is apparent that the court must have utilized at least the notice of claim in arriving at its decision. As such, both the State and the trial court improperly treated the State's motion as one to dismiss when it should have been considered a motion for summary judgment. *See* Ariz. R. Civ. P. 12(b); *Frey v. Stoneman,* 150 Ariz. 106, 109, 722 P.2d 274, 277 (1986) ("Because the State would have seriously considered set-

evidence extrinsic to the pleadings was offered to and relied on by the trial judge in making this decision, the motion to dismiss should have been treated as one for summary judgment.").

¶ 14 Similarly, in the *Backus* case, because the State's motion to dismiss attached the notice of claim, which was not part of the complaint, the trial court was required to treat the motion as one for summary judgment. *See* Ariz. R. Civ. P. 12(b); *Frey,* 150 Ariz. at 109, 722 P.2d at 277. Accordingly, we determine *de novo* in each case whether there are genuine issues of material fact and whether the respective trial courts erred in their application of the law. *Schwab v. Ames Constr.,* 207 Ariz. 56, 60, ¶ 17, 83 P.3d 56, 60 (App.2004).

### B. *The Deer Valley Case*

¶ 15 In the *Deer Valley* case, the plaintiff sent a notice of claim to a school district, alleging that the school district wrongfully terminated her as an assistant high school principal and identifying several categories and amounts of damages with qualifying language. 214 Ariz. at 294–95, ¶¶ 2–3, 152 P.3d at 491–92. When the plaintiff did not receive a response from the school district, she filed a complaint alleging wrongful termination. *Id.* at 295, ¶ 4, 152 P.3d at 492. The superior court refused to dismiss the complaint on the basis that the notice of claim had failed to specify an exact sum for which the claim could be settled. *Id.* This court declined jurisdiction of the school district's petition for special action, but the Arizona Supreme Court accepted review, reversed the superior court, and directed the dismissal of the complaint. *Id.* at 295, 299, ¶¶ 4–5, 24, 152 P.3d at 492, 496. In its analysis, our supreme court made it clear it was only addressing that portion of the statute that requires the claimant to identify a specific amount for which the claim could be settled. *Id.* at 295–97, ¶¶ 6–11, 152 P.3d at 492–94. In the wake of that opinion, however, the trial courts have been flooded with motions to dismiss arguing that the notices of claim filed by the injured parties are insufficient as a matter of law for allegedly failing to comply with the statute.

tling either of these cases.

### C. Standard for Compliance with Statute

¶ 16 In these consolidated cases, the State urges us to graft the word "sufficient" from the second sentence of A.R.S. § 12–821.01(A), regarding sufficient facts to permit the public entity to understand the basis for liability, onto the third sentence of the statute regarding facts supporting the proposed settlement amount. The State argues that such a reading of the statute is not only logical but required by the statutory language.

¶ 17 In furtherance of this argument, the State points to and relies upon the following language from footnote three in the *Deer Valley* decision:

> Because [the plaintiff's] letter does not include a specific sum, we need not reach the [defendant's] argument that [the plaintiff's] letter also fails to provide facts supporting the amount claimed. We note, however, that the claim letter does not provide *any* facts supporting the claimed amounts for emotional distress and for damages to [the plaintiff's] reputation.

214 Ariz. at 297 n. 3, ¶ 11, 152 P.3d at 494 n. 3.

¶ 18 The State contends that this language implies an objective measure or standard by which the sufficiency of the facts supporting the proposed settlement amount in a notice of claim is judged.[5] In response, the claimants and the amicus argue here that the footnote is dictum with no precedential value. The State acknowledges that the *Deer Valley* discussion of the supporting facts requirement is dictum, but argues that we are not free to disregard it. We must agree with the State in part as the footnote, while otherwise dictum, might suggest some guidance for future conduct for those subject to the requirements of A.R.S. § 12–821.01(A). *See State v. Fahringer*, 136 Ariz. 414, 415, 666 P.2d 514, 515 (App.1983) ("An expression which might

otherwise be regarded as dictum becomes an authoritative statement when the court expressly declares it to be a guide for future conduct. Such holdings must be considered as *judicial* dicta rather than mere *obiter* dicta and should be followed in the absence of some cogent reason for departing therefrom." (citations omitted)). However, to the extent that such language can be characterized as guidance, it is clearly and strictly limited to the admonition that a notice of claim that does not provide *any facts* may be considered insufficient to support the proposed settlement amount. Simply stated, *Deer Valley* provides no guidance on what may or may not be sufficient facts beyond the one narrow circumstance of no facts at all.

¶ 19 We further observe that "[w]here the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded." *Ariz. Bd. of Regents ex rel. Univ. of Ariz. v. State ex rel. State of Ariz. Pub. Safety Ret. Fund Manager*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989). Accordingly, we cannot read the term "sufficient" into the third sentence as the State urges.

¶ 20 Alternatively, the State advocates for a judicially-created standard against which these claim letters can be measured. Even were we to attempt to do so, what would be the parameters of such "standard"? Each claim is different. Accordingly, a "one size fits all" approach to compliance with the statute may be problematic. As pertinent here, the information that may be deemed relevant to support a general damages claim in a wrongful death case with no special damages is quite different from a personal injury claim where an individual supporting a family is contending permanent impairment, past and future medical expenses, and past

---

**5.** The State in *Johnson* attempts in its brief to assert that its arguments therein are based on the wording of A.R.S. § 12–821.01(A) and not on the quoted language from *Deer Valley* and that the motion to dismiss was granted on the basis of the statute's language alone. That argument is wholly unpersuasive given that the State's motion to dismiss begins with the assertion that Johnson's notice of claim "fail[ed] to comply with A.R.S.

§ 12–821.01[(A)], *as interpreted by the Arizona Supreme Court in Deer Valley ....*" (Emphasis added.) Since it is undisputed that the notice of claim met the direct holding of *Deer Valley, i.e.*, regarding a specific proposed settlement amount, the State's motion can only be seen as invoking *Deer Valley* for the statement made in the third footnote.

and future lost income as a result of the State's negligence.

¶ 21 For example, in such a personal injury claim with special damages, the State might argue it is entirely appropriate to expect the claimant to specifically identify the nature and cost of past medical care and anticipated cost of any future medical care required. It might, in the abstract, be equally reasonable to expect the claimant to describe the amount of work time lost and approximate dollar value relative to such lost income claim and, to the extent practicable, outline the nature and extent of any future lost earning capacity anticipated as a result of the injury.[6] While such expectations might easily be described as a matter of common sense, the uniform, objective interpretation and application of such a "standard" are not only impossible to predict but also impractical to adjudicate.

¶ 22 General damages in a negligence case are different than quantifiable special damages. These damages relate to things that cannot be objectively measured with certainty, such as pain, suffering (physical and emotional), the diminution or loss of the ability to engage in recreational and family activities, and, in general, how the injury adversely affects the claimant's ability to participate in and enjoy the daily activities of life. General damages are, by nature, subjective and personal to the individual seeking them. This does not mean, however, that general damages may not be measured in some fashion. Indeed, we ask juries every day to place a value on these intangible categories of damages. Further, the nature and extent of these damages claims are the subject of daily negotiations by claimants, insurers, the business community, and governmental entities such as the State.

¶ 23 As evidenced by the arguments advanced in these appeals, the nature and extent of information subjectively desired by the government relative to general damages claims will likely vary from case to case. Attempting to fashion a "standard" against

which such a general damages factual statement can be measured is equally impractical.

¶ 24 To the extent the governmental entity seeks additional information to evaluate the demand, it certainly can ask for it, much as was done in the *Backus* case. The fiction inherent in the State's argument for a "sufficiency" standard and at least some of the purported bases as identified in our cases for the notice of claim statute is that the particular governmental entity is unsophisticated and inexperienced in the process of evaluating these types of cases. To the contrary, in most situations, it is the claimant who is unsophisticated and at a distinct disadvantage in attempting to comply with the statute. In contrast, the particular governmental entity is likely to have a highly trained and experienced individual or individuals whose job duties are, in large part, devoted to the management, evaluation, and settlement of claims and litigation. These individuals, perhaps guided by government lawyers and/or insurance claim or risk management professionals, have a firm idea of the information they need, certainly know how to ask for it if not supplied, and know how to evaluate such additional information upon receipt. Any statutory interpretation by the courts should not place claimants in the situation of guessing about what information the government might want in any given case.

### D. Constitutional Concerns

■■ ¶ 25 Johnson and the amicus urge this court to find the statute unconstitutional as applied. The requirement of A.R.S. § 12–821.01(A) that a claimant provide facts to support a proposed settlement is not in itself unconstitutional. Such a requirement is within the legislature's power to regulate lawsuits against the government under Article 4, Part 2, Section 18 of the Arizona Constitution. *See Landry v. Superior Court,* 125 Ariz. 337, 338, 609 P.2d 607, 608 (App. 1980) ("The legislature may restrict an individual's right to sue the [S]tate and the manner in which a suit may be maintained.").[7]

---

6. We observe that, because of the 180–day deadline imposed by the current statute, the claimant often has limited or no opportunity to determine

the parameters, let alone the full extent, of any special damages.

7. "We differentiate between abrogation and regulation by determining whether a purported leg-

¶ 26 Further, legislation such as the notice of claim statute is presumed constitutional, *see Sonoran Desert Investigations, Inc. v. Miller*, 213 Ariz. 274, 277, ¶ 5, 141 P.3d 754, 757 (App.2006), and we need not reach the constitutional issues if we can fairly construe and apply the statutory language to these cases. *See City of Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 109, ¶ 7, 32 P.3d 31, 34 (App.2001) (indicating that the appellate court does not reach the constitutional issue if the matter can be decided on non-constitutional grounds). Indeed, we are required to first do that if at all possible. *See State v. Petrak*, 198 Ariz. 260, 264, ¶ 10, 8 P.3d 1174, 1178 (App.2000) ("[W]e look first to [the statute's] language and apply the language unless the result is 'absurd or impossible.'" (citation omitted)). Accordingly, we turn to the issue of whether these claim letters complied with the language of the notice of claim statute.

### E. Construction and Application of the Statute

■ ¶ 27 We look to the plain wording of the statute and the need to effectuate the legislative intent behind the statute to guide us in our determination of whether the plaintiffs here provided *any* facts supporting the proposed settlement amount in compliance with the statute. *See Scottsdale Healthcare, Inc. v. Ariz. Health Care Cost Containment Sys. Admin.*, 206 Ariz. 1, 5, ¶ 10, 75 P.3d 91, 95 (2003) ("In interpreting a statute, we first look to the language of the statute itself. Our chief goal is to ascertain and give effect to the legislative intent." (citations omitted)); *Turf Paradise, Inc. v. Maricopa County*, 179 Ariz. 337, 340, 878 P.2d 1375, 1378 (App.1994) ("In interpreting a statute, we attempt to effectuate the legislative intent ... and also give the words their ordinary meaning." (citations omitted)).

¶ 28 If the notices of claim provided by Backus and Johnson contain *any* facts to support the proposed settlement amounts, regardless of how meager, then such notices met not only the literal language of the statute but also any requirement that may be implied from *Deer Valley*. In the context of the wrongful death claims being advanced here, we hold that the notices of claim were sufficient to meet any requirement implied by *Deer Valley* with respect to "a factual foundation" supporting the proposed settlement amount.[8] 214 Ariz. at 296, ¶ 9, 152 P.3d at 493.

¶ 29 Here, Backus submitted a general damages claim for the alleged premature death of her incarcerated father. While it may have been optimal had Backus set forth in detail a description of the relationship she enjoyed with her father as of the time of death, we do not agree with the State that such detail was required to satisfy the statute. For purposes of the statute, it was enough for the State to understand that Backus was a surviving adult child and was seeking compensation for the death of her father. If the State in good faith truly wanted further information about the nature and quality of the relationship, it certainly could have asked for it, much as it asked for proof of standing to assert the claim.

¶ 30 In our view, it would also have been acceptable in this case for Backus to simply indicate that any life has value, particularly to a surviving family member, and for her to arbitrarily place a dollar figure on this admittedly purely subjective assessment. Instead,

---

islative regulation leaves those claiming injury a reasonable possibility of obtaining legal redress." *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986). The constitutional arguments implicated here are not only impermissible abrogation of the right to bring an action, *see* Ariz. Const. art. 18, § 6, but also a violation of due process based upon disallowance of all claims that fail to meet a supporting facts requirement that is without identifiable and objective standards. *See Cohen v. State*, 121 Ariz. 6, 9, 588 P.2d 299, 302 (1978) ("[I]ndefiniteness in any statute may constitute an unconstitutional denial of due process of law as guaranteed by the

[F]ourteenth [A]mendment of the United States Constitution and [A]rticle 2, [Section] 4 of the Arizona Constitution when it is so vague that men of common intelligence must guess at its meaning and differ as to its application.").

8. Because we find that the notices of claim submitted here met any requirement established by *Deer Valley* in regards to facts supporting the proposed settlement amounts, we do not reach the identically-advanced arguments by the plaintiffs that *Deer Valley* should only be applied prospectively.

she chose to utilize an approach or formula that insurance companies and risk managers have been familiar with for years, i.e., using statistical life expectancy to structure her general damages claim. Admittedly, the number she chose to apply to the formula, $21,500 per year for each year of her father's anticipated remaining life span, was not explained. However, to our observation, providing a "factual basis" for that annual number would not have added anything to the State's investigation or consideration, and simply highlights, under the facts of this claim, how unreasonable it can be to expect surviving family members to provide some level of factual detail to justify and value their intangible grief over the loss of a loved one.[9]

¶ 31 Similarly, in *Johnson,* the claim letter provided at least two "facts" supporting the damages claim. First, the letter noted that Vickie had died prematurely, and second, that she was survived by her mother and several other statutory beneficiaries. While it may be preferable for the claimant to provide further detail concerning the "quality" of the relationship between the decedent and the statutory beneficiaries, the literal language of the statute does not require it. Therefore, *any* facts in support of the claimed amount constitute the minimal compliance necessary to satisfy the statute as written.

## IV. CONCLUSION

¶ 32 We remind litigants that the notice of claim statute is not intended to supplant the requirements of a disclosure statement under Rule 26.1 or the discovery procedures authorized by Rules 30 through 36 of the Arizona Rules of Civil Procedure. As we have discussed above, the statute itself, as presently constituted, requires only that the claim letter contain some facts in support of the specific settlement demand.

9. Backus suggests that the facts she provided to support her claim that the State was liable for her father's death also satisfied the statute's requirement that she provide facts supporting her claimed settlement amount. Specifically, she argues that the fact that the State allegedly denied her father appropriate medical treatment for a prolonged period of time is a factual basis for her

¶ 33 For the reasons stated above, we reverse the orders of the trial courts dismissing the complaints, and remand these cases for further proceedings consistent with this opinion.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and G. MURRAY SNOW, Judge.

requested settlement amount. In light of our discussion above, we do not need to reach this argument. Nor do we address her alternative arguments that the State, by its conduct, waived strict compliance with the statute or is otherwise estopped, under the facts of this case, from asserting noncompliance with the statute as a bar to filing suit.