Ex Parte John T. COLLUM.

No. 2–92–299–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 25, 1992.

George C. Thompson, Jr. & Associates, Inc., George C. Thompson, Fort Worth, for appellant.

Amy Ayers Adams, Dist. Atty., and Donald E. Schnebly, Asst., Weatherford, for appellee.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

MEYERS, Justice.

Appellant, John T. Collum, was arrested on the charge of capital murder. After a habeas corpus hearing, the trial court denied him bail. He is now in confinement in Parker County Jail. He is appealing this denial of bail.

We affirm.

The evidence entered at the habeas corpus hearing is as follows. This case arose out of the murder of Gary Autrey on or around December 18, 1991. His body was found on December 19, 1991, off of New Hope Road in Parker County. He had been shot in the left chest area.

On December 20, 1991, the victim's wife came to the sheriff's office and gave a statement implicating that appellant killed her husband. In conjunction with this statement, she gave them a letter written by the victim.

This letter was addressed "To Whom It May Concern," and was written on May 24, 1991, almost seven months before the murder. In the letter, the victim claimed that he had just discovered that appellant had taken out a $50,000 life insurance policy on him. The letter stated that if an "accident" happened to the victim, he wanted appellant and his wife, Donna Collum, among others, charged with murder.

On June 17 and June 22, 1992, appellant's wife made statements, confirming that prior to the murder appellant took out a life insurance policy on the victim. She also claimed that appellant had another person, Eva Lolless, murder the victim so that they could collect on the policy and that appellant promised Lolless money for committing the murder.

On June 26, 1992, Lolless confessed to killing the victim. On June 28, 1992, Monica Chandler also confessed to killing the victim. Both Lolless and Chandler confirmed that appellant and his wife offered Lolless money to commit the murder. Lolless stated that they paid her a thousand dollars for murdering the victim. Chandler stated that Lolless paid her three hundred dollars for helping commit the murder.

According to these confessions, on the evening of the murder, Lolless and Chandler flirted with the victim in order to lure him into the car they were driving. After the victim was persuaded to drive around with them, the threesome proceeded to drink beer while Lolless was driving around trying "to get enough nerve to do it." During the car ride, Lolless claims that they discussed the fact that appellant had taken out a life insurance policy on the victim.

Eventually, they pulled over to relieve themselves. Soon thereafter, the victim and Chandler lay down on grass to the side of the road. As Chandler got off of him and turned away, Lolless shot at the victim. Chandler then told Lolless that the victim was still alive, so Chandler proceeded to shoot at the victim. According to Lolless, she asked Chandler if the victim was dead and Chandler replied yes "because [I] held the gun to his chest and shot him."

Afterwards, Lolless called the Collums. She talked to appellant's wife who relayed appellant's reassurances that Lolless would not get caught. Lolless claims that about a week later, when she was alone with appellant and his wife, he asked her for the murder weapon. Finally, the investigation report contains a summary of a taped telephone conversation that appellant had with his wife. According to the report, Donna Collum said, "we should not have paid Eva to kill Gary" to which appellant replied, "if I had not loved you I would not of [sic] done that."

The State's complaint of June 28, 1992, charges appellant with intentionally and knowingly causing the victim's death by employing an agent to murder the victim for remuneration. Appellant was arrested on that day. On June 30, 1992, he filed a writ of habeas corpus moving the court to conduct a hearing and, subsequently, order him discharged from custody or set bail at $20,000.

A hearing was held on July 7, 1992. The State's only evidence was a large compilation of papers referred to as the "complaint." This evidence was admitted at the hearing without objection. The State introduced no live testimony, but did cross-examine the defendant's witnesses. Appellant's witnesses testified that appellant would not leave the area if he were granted bail.

On July 8, 1992, the trial court entered an order denying bail. In this order, it found that the "proof presented makes evident the commission of the capital offense and the likelihood of capital punishment."

Appellant raises two points of error. He claims: 1) that the trial court erred in denying him bail; and 2) that bail should be set at a reasonable amount. We uphold the trial court's denial of bail because we find that the proof is evident that appellant would be found guilty of capital murder and a sentence of death would be imposed.

■ In appellant's first point of error, he claims that the trial court erred in denying him bail because the State failed to meet its burden of proof that appellant would receive the death penalty if convicted of capital murder. Before we review appellant's specific complaints, we note that the decision of the trial judge that proof is evident is entitled to weight on appeal. *Ex parte Ott*, 565 S.W.2d 540, 542 (Tex.Crim.App. [Panel Op.] 1978). Even so, it is our duty to examine the evidence and determine if the court's decision was proper. *Ex parte Short*, 462 S.W.2d 281, 283 (Tex.Crim.App. 1971); *see Maxwell v. State*, 556 S.W.2d 810, 811 (Tex.Crim.App.1977).

■ Texas law provides for bail for all prisoners, except those who committed capital offenses "when the proof is evident." TEX. CONST. art. 1, § 11; TEX.CODE CRIM. PROC.ANN. art. 1.07 (Vernon 1977); *Ex parte Ott*, 565 S.W.2d at 541. Thus, the burden of proof is on the State to clearly prove that the jury would not only convict the accused, but would also return findings

requiring the imposition of the death sentence under article 37.071 of the Code of Criminal Procedure. *Ex parte Ott*, 565 S.W.2d at 541.

■ Under the revised article 37.071, the first question the jury must affirmatively answer is whether there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. TEX.CODE CRIM.PROC. ANN. art. 37.071, § 2 (Vernon Supp.1992). The State argues that the appellant only appealed the trial court's finding to this question. After carefully reviewing appellant's arguments, we agree with the State.

The Court of Criminal Appeals has held that the circumstances of the capital offense itself, if severe enough, can be sufficient to sustain an affirmative finding to the issue of whether there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society. *O'Bryan v. State*, 591 S.W.2d 464, 480 (Tex.Crim.App.1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980). We review a case similar to ours, *McKenzie v. State*, 777 S.W.2d 746 (Tex.App.—Beaumont 1989, no pet.), for guidance in determining whether the circumstances of the crime itself are sufficient to affirm the trial court's finding that there is a probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society.

In *McKenzie*, a defendant was charged with intentionally and knowingly causing the death of an individual for remuneration. *Id.* at 747. At the habeas corpus hearing, the triggerman testified that through a series of phone calls, the defendant asked him to kill the man. *Id.* at 748. The defendant showed the triggerman where the deceased lived and devised a scheme to make the murder look like a robbery. *Id.* He also told the triggerman what to do with the body. *Id.* Further, he required the triggerman to notify him of the death before the money was delivered. *Id.* at 750. The court found that he had been determined and persistent in convincing the triggerman to kill the deceased. *Id.* at 749. Thus, the court held that the proof was evident that a jury would find

that the defendant would probably commit criminal acts of violence in the future that would constitute a continuing threat to society. *Id.* at 750.

With this in mind, we review the evidence in our case. According to the statements entered into evidence, besides asking Lolless to commit the murder, appellant asked one of his employees to kill the victim so that appellant could collect on the life insurance policy. Appellant provided Lolless the handgun for the victim's murder. He devised the murder scheme that Lolless flirt with the victim, pick him up, and murder him.

According to the confessions, appellant had the victim murdered in order to collect on the life insurance policy of which he was the primary beneficiary and his wife was the secondary beneficiary. The investigation report shows that, after the murder, appellant inquired twice about the policy. This evidence alone sufficiently shows that appellant acted in a deliberate and calculated manner, as the defendant did in *McKenzie*.

Appellant attempts to distinguish *McKenzie* on the ground that the *McKenzie* court also based its holding on evidence that the defendant had been involved in narcotics and had committed unadjudicated extraneous offenses. While it is true that in this case there is no evidence that appellant was involved in narcotics, the State argues there is evidence that appellant committed unadjudicated offenses. The Court of Criminal Appeals has held that unadjudicated extraneous offenses are relevant to a defendant's propensity to commit future acts of violence. *Ex parte Alexander*, 608 S.W.2d 928, 930 (Tex.Crim.App. [Panel Op.] 1980).

We find that there is evidence introduced by the State of unadjudicated extraneous offenses. The letter written by the victim prior to his death states that appellant threatened him not to notify the police about the life insurance policy. He wrote: "Mr. Collum said ... he would make sure an accident would happen to cause me to lose my life." In her June 17th statement, appellant's wife claimed that on several occasions appellant pointed a gun at her,

threatening her life. She also claimed that she had seen appellant beat his employees with an iron rod, and that appellant told her he had killed others and buried them on their property. Further, Lolless claimed in her confession that she killed the victim because "I was in fear of my life if I didn't go through with killing Gary. It was either him or me."

The victim's wife claimed that her husband and another of appellant's employees told her that appellant carried a gun in his pocket at work. When he became angry at his employees, he would scare them by sticking his hand in his pocket. The victim's wife also claimed that appellant was involved in intentionally setting a house on fire.

This evidence, taken as a whole, is evidence of unadjudicated extraneous offenses. Not only is there evidence that appellant threatened the victim with his life, but he also threatened his wife, his other employees, and Lolless. There is evidence that appellant committed arson and other murders. This is evidence that appellant has the propensity to commit future violent crimes.

Upon reviewing all of this evidence, we agree with the trial court's denial of bail. There is evidence that appellant committed the murders in such a deliberate and calculated manner that the circumstances of the crime are sufficient to uphold the finding that appellant has the propensity to commit violent crimes in the future and is therefore a continuing threat to society. Further, evidence of unadjudicated extraneous crimes also supports the trial court's finding. For these reasons, we hold that the State met its burden of producing proof evident that a jury would find appellant guilty of capital murder and enter findings under article 37.071 that would mandate the imposition of a death sentence.

The trial court's order is affirmed.