85 P.3d 478

Jason Donald SIMPSON, Sr., Petitioner,

v.

The Honorable Bernard OWENS, Commissioner of the Superior Court of the State of Arizona, in and for the County of Maricopa, the Honorable Randy Ellexson, Commissioner of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judges,

State of Arizona, Real Party in Interest.

No. 1 CA–SA 03–0188.

Court of Appeals of Arizona, Division 1, Department E.

Feb. 26, 2004.

Quarles & Brady Streich Lang, LLP by Darrow K. Soll and John R. Sandweg and Gallagher & Kennedy, P.A. by Barry D. Mitchell, Phoenix, Attorneys for Petitioner.

Richard M. Romley, Maricopa County Attorney By Patricia A. Nigro, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

James J. Haas, Maricopa County Public Defender By Michelle Lawson, Deputy Public Defender, Phoenix, Amicus Curiae.

## OPINION

EHRLICH, Judge.

¶1 Jason Donald Simpson, Sr., petitioned this court to accept jurisdiction of his special action, claiming that he was entitled to a "full and adversarial bail hearing" and to bail pending his trial for certain sexual offenses against children. We accepted jurisdiction and granted substantial relief in an earlier order.

¶2 Simpson generally contends that he was illegally held in pre-trial detention without bail. Essentially he is asking this court to clarify the means of execution of Article 2, Section 22 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") § 13–

3961(A) (2001 & Supp.2003) (eff. Nov.25, 2002) (together referred to by the statutory citation). We address three issues:

(1) whether due process required that Simpson be given a bail hearing pursuant to Article 2, Section 22 of the Arizona Constitution and A.R.S. § 13–3961(A);

(2) whether the State was obligated to prove at a full and adversarial bail hearing that the "proof is evident or the presumption great" that Simpson committed those charged offenses at issue by clear and convincing evidence before he could be denied bail; and

(3) whether Simpson should have been allowed bail pending a full and adversarial bail hearing.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 3 At the November 2002 general election, Arizona voters passed ballot Proposition 103 amending Article 2, Section 22 of the Arizona Constitution and A.R.S. § 13–3961. Prior to that amendment, Article 2, Section 22(1) of the Arizona Constitution declared:

All persons charged with [a] crime shall be bailable by sufficient sureties, except for:

1. Capital offenses when the proof is evident or the presumption great.

See also A.R.S. § 13–3961(A) (2001) ("A person in custody shall not be admitted to bail if the proof is evident or the presumption great that he is guilty of the offense and the offense charged is a capital offense."). Proposition 103 added to the charge of a capital offense the charges of sexual assault, sexual conduct with a minor who is less than fifteen years of age and molestation of a child who is less than fifteen years of age. See 2002 ARIZ. SESS. LAWS, Ch. 219 § 21, Ch. 223 § 1.

¶ 4 On July 5, 2003, the Peoria Police Department was told that there was child pornography on Simpson's computer. Officers seized the computer and a videotape that purportedly depicts Simpson engaging in sexual activity with a minor girl. Simpson was charged with several offenses, including intentionally or knowingly engaging in sexual intercourse or oral sexual contact with a minor less than fifteen years of age.

¶ 5 At Simpson's initial appearance, the prosecutor cited A.R.S. § 13–3961(A) and requested that Simpson be denied bail because "the proof is evident or the presumption great" that Simpson had committed the charged crimes. No evidence was presented,[1] but the prosecutor avowed that (1) an experienced forensic pediatrician had viewed the videotape and determined, through Tanner Staging,[2] that one of the girls shown in the video was less than age fifteen, (2) the same pediatrician had examined downloaded computer images and concluded, also through Tanner Staging, that at least some of the images depicted children less than age fifteen, (3) a detective had viewed the images and determined that they contained images of children less than age fifteen and (4) Simpson was a flight risk because he had hidden cash and was facing consecutive sentences if convicted as charged. Simpson disputed the prosecutor's assertion that Tanner Staging had been appropriately used.

¶ 6 The court commissioner found the presumption great and the proof evident that Simpson had committed the charged offenses, and therefore refused to set bail. Simpson insisted that A.R.S. § 13–3961(A) contemplated an evidentiary hearing, but his motion for reconsideration was denied.

¶ 7 Simpson then was indicted for multiple counts of sexual exploitation of a minor, an offense not encompassed by A.R.S. § 13–3961(A). The superior court set bail at $250,000 and ordered Simpson to appear for

---

1. Much of the recording of the proceedings apparently was indiscernible to the transcriber, and so we can only gather that the detectives had interviewed witnesses and that the prosecutor repeated their statements. During the proceedings, the prosecutor admitted that she did not have sufficient information to make an avowal to the court about specific evidence.

2. Tanner Staging was developed to estimate a child's physiologic stage of maturation for medical, educational and athletic purposes. It was particularly designed to identify "early and late maturers" provided that the actual chronological age was known. Arlan L. Rosenbloom, M.D. & James M. Tanner, M.D., Ph.D., *Letter to the Editor: Misuse of Tanner Puberty Stages to Estimate Chronologic Age*, 102 PEDIATRICS 1494 (1998).

arraignment. After Simpson posted a bond, he was released.

¶ 8 At the arraignment, the commissioner ordered that Simpson could remain released. Simpson was alerted, however, that he was going to be arrested on similar charges immediately after his arraignment.

¶ 9 Simpson surrendered and made another initial appearance. He was charged with intentionally or knowingly engaging in sexual intercourse or oral sexual contact with a minor less than fifteen years of age and other offenses. The prior indictment was dismissed.

¶ 10 The record before us is incomplete, but it appears that the commissioner relied solely upon the prosecutor's avowals and a one-page summary of the allegations and that Simpson was not permitted to challenge the allegations through any meaningful process. Simpson requested a bail hearing, but it was denied, and Simpson was jailed.

¶ 11 Simpson filed a petition for special action in this court.[3] He argues that Arizona voters intended that an evidentiary hearing be held regarding whether the proof is evident or the presumption great that the accused committed the offenses charged before bail can be denied.

¶ 12 A court must "effectuate the intent of those who framed the provision and, in the case of [a referendum], the intent of the electorate that adopted it." *Calik v. Kongable,* 195 Ariz. 496, 498 ¶ 10, 990 P.2d 1055, 1057 (1999) (quoting *Jett v. City of Tucson,* 180 Ariz. 115, 119, 882 P.2d 426, 430 (1994)). If the meaning of the proposition is not clear, the court considers the history of the provision, its purpose and the "evil" intended to be remedied.· *Jett,* 180 Ariz. at 119, 882 P.2d at 430. In Proposition 103, the voters made clear that, for certain offenses, bail would be denied after a hearing for which the standard would be that the proof be evident or the presumption great that the accused had committed the crimes charged. We conclude in turn that due process requires that a full and adversarial evidentiary hearing be conducted as described below.

## DISCUSSION

### I. Jurisdiction

¶ 13 We exercised our discretion in favor of accepting jurisdiction. *State ex rel. McDougall v. Super. Ct.,* 186 Ariz. 218, 219–20, 920 P.2d 784, 785–86 (App.1996) (The acceptance of jurisdiction is within the discretion of this court.). Having been denied bail when he filed his Petition for Special Action, Simpson had no "equally plain," speedy [or] adequate remedy by appeal." ARIZ. R.P. SPEC. ACT. 1(a); *State ex rel. Romley v. Rayes,* 206 Ariz. 58, 60 ¶ 5, 75 P.3d 148, 150 (App.2003). Although Simpson has now been allowed bail, making his question a moot issue that we usually would not consider, *Contempo–Tempe Mobile Home Owners Ass'n v. Steinert,* 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App.1985), we may continue to "consider an appeal that has become moot if there is either an issue of great public importance or an issue capable of repetition yet evading review." *Phoenix Newspapers, Inc. v. Molera,* 200 Ariz. 457, 460 ¶ 12, 27 P.3d 814, 817 (App.2001). The issue whether due process is being provided to an individual charged with the crimes enumerated in A.R.S. § 13–3961(A) meets the standards for accepting jurisdiction: no remedy or no adequate remedy by appeal; a constitutional issue that will be presented again; an issue of public notability; an issue of statewide significance; an issue unresolved by the appellate court and with differing resolutions among the superior courts, and, therefore, a matter of judicial economy to resolve. *See Rayes,* 206 Ariz. at 60 ¶ 5, 75 P.3d at 150;

---

**3.** In response to our interim order while our final resolution was pending, a bail hearing was conducted. During the hearing, the prosecutor offered the testimony of Detective Thomas Stewart and made avowals about the testimony of Dr. Kathryn Coffman regarding the age of the victims. Simpson was able to cross-examine the detective and present testimony from Dr. Arlan Rosenbloom. He also offered the sworn testimony of Dr. Coffman, arguing that it contradicted the prosecutor's avowals regarding Dr. Coffman's possible trial testimony. The trial court ruled that the State did not bear its "burden of proof by clear and convincing evidence" that "the proof is evident or presumption great" that Simpson committed the crimes charged, and he was permitted bail of $126,000.

*Arizona Dep't of Pub. Safety v. Super. Ct.,* 190 Ariz. 490, 493–94, 949 P.2d 983, 986–87 (App.1997). Accordingly, we accepted jurisdiction.

## II. Constitutional Guarantees

¶ 14 In support of his argument that he is entitled to bail, Simpson invokes the federal and Arizona constitutional prohibitions against excessive bail. U.S. CONST. amend. VIII; ARIZ. CONST. art. 2, § 15. The United States Supreme Court has rejected this connection:

> The bail clause was lifted with slight changes from the English Bill of Rights [of 1689]. In England that clause has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail.

*Carlson v. Landon,* 342 U.S. 524, 545, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (citing 1 Wm. & Mary Sess. 2, c. II, § I(10); other citation omitted); *see Rendel v. Mummert,* 106 Ariz. 233, 235–37, 474 P.2d 824, 826–28 (1970); *Rayes,* 206 Ariz. at 61 ¶ 9, 75 P.3d at 151; *State v. Garrett,* 16 Ariz.App. 427, 428, 493 P.2d 1232, 1233 (1972).[4]

¶ 15 There is a right to bail in Arizona except when "the proof is evident or the presumption great" that the accused has committed one of the offenses enumerated in A.R.S. § 13–3961(A). *Rayes,* 206 Ariz. at 61–62 ¶¶ 11–12, 75 P.3d at 151–52. Relying on this provision, Simpson contends that to deny him bail without a full and adversarial evidentiary hearing is to deprive him of liberty without due process contrary to the guarantees of Amendments V and XIV to the United States Constitution and Article 2, Section 4 of the Arizona Constitution.

¶ 16 Simpson relies heavily on *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), which involved a due-process challenge to the federal Bail Reform Act of 1984. That statute allowed the federal courts to deny bail to persons charged with certain felonies "if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure . . . the safety of any other person and the community.'" *Id.* at 741, 107 S.Ct. 2095 (citations omitted). The Court held that, when such proof exists, the pre-trial detention of the accused without bail is not inconsistent with due process. *Id.* at 750–51, 107 S.Ct. 2095.[5]

---

4. *See also United States v. Edwards,* 430 A.2d 1321, 1327 (D.C.App.1981) ("[A] fundamental right to bail was not universal among the colonies or among the early states;" "the language of several state constitutions explicitly limiting the power of the judiciary to set excessive bail negates any suggestion that the excessive bail clause was intended to restrict the definition of bailable offenses by the legislature."), *cert. denied,* 455 U.S. 1022, 102 S.Ct. 1721, 72 L.Ed.2d 141 (1982); *People ex rel. Shapiro v. Keeper of City Prison,* 290 N.Y. 393, 49 N.E.2d 498, 500 (1943) ("Most of the States have constitutional provisions making bail a matter of right in all except capital cases but in the States like New York, whose Constitutions follow the Federal model in this respect by prohibiting 'excessive bail,' such a constitutional declaration as to bail accords no accused any right to bail, but serves only to forbid excessiveness." (Citations omitted.)); *Sherelis v. State,* 452 N.E.2d 411, 413 (Ind.App.1983) ("[O]nce bail is made available, the amount set shall not be excessive, as this constitutes a denial of that right altogether."); *In re Nordin,* 143 Cal.App.3d 538, 192 Cal.Rptr. 38, 41 (1983) ("While the United States Supreme Court has never expressly ruled on the question, federal law is clear to the effect that the prohibi-

tion against 'excessive bail' contained in the Eighth Amendment is to be understood as a restraint upon judicial discretion respecting the amount of bail and not as an attempt to regulate the legislative power respecting eligibility for bail" (citing *Edwards,* 430 A.2d at 1325–31) (footnote omitted)); Note, *Preventive Detention,* 36 GEO. WASH. L.REV. 178, 183 (1967); Note, *Preventive Detention Before Trial,* 79 HARV. L.REV. 1489, 1501 (1966) (finding that in most jurisdictions bail may be denied in capital cases); Editorial Board, Arizona Law Review, *Arizona Supreme Court, II. Criminal Law, A. Procedure, Bail Revocation,* 13 ARIZ. L.REV. 365, 368 (1971). *But cf.* Caleb Foote, *The Coming Constitutional Crisis in Bail: I,* 113 U. PA. L.REV. 959 (1965).

5. The Vermont Supreme Court found *Salerno* to have "only limited applicability" because the case involved a federal statute. *State v. Blackmer,* 160 Vt. 451, 631 A.2d 1134, 1139 (1993). We disagree with the Vermont court as to the extent of the applicability of *Salerno* because in *Salerno,* while discussing the Bail Reform Act, the United States Supreme Court also declared what is necessary for due process in the determination of bail, a principle applicable not only to the federal government.

¶ 17 In *Salerno*, the Court addressed both substantive and procedural due process. Substantive due process protects an individual from government interference with "rights 'implicit in the concept of ordered liberty.'" *Id.* at 746, 107 S.Ct. 2095 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). Procedural due process guarantees that permissible governmental interference is fairly achieved. *Id.* Both due process analyses begin with an examination of the individual interest arguably impeded by governmental action, and both substantive and procedural due process apply to bail decisions—not because of a constitutional right to bail but because liberty is a fundamental right independently guaranteed. *Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). However, governmental interests in detaining a person may permissibly outweigh the person's fundamental liberty interest. *Salerno*, 481 U.S. at 748, 107 S.Ct. 2095; *see In re Nordin*, 192 Cal.Rptr. at 41 (Pretrial detention "is regulatory rather than penal in nature," and thus is often found to comport with due process because the detention "is merely incidental to some other legitimate governmental purpose." (Citations omitted.)).

¶ 18 In the mid–17th century, the accepted general rule was against pre-sentence incarceration and in favor of bail except for capital crimes.[6] The limitation in capital cases was in large part because of the supposition that the accused would flee to save his life even if bail were posted. *State v. Duff*, 151 Vt. 433, 563 A.2d 258, 261 (1989) (citing 2 W. Blackstone, *Commentaries on the Laws of England*, at 296–97).[7]

---

6. *See New York Charter of Liberties and Privileges* (Oct. 30, 1683), *reprinted in Colonial Origins of the American Constitution* 256, 259 (Donald S. Lutz ed., 1998) [hereinafter *Colonial Origins* ] ("In all Cases whatsoever Bayle by sufficient Suretyes Shall be allowed and taken unless for treason or felony" if "menconed in the Warrant of Commitment."); *Charter of Liberties and Frame of Government of the Province of Pennsylvania in America* (May 5, 1682), *reprinted in Colonial Origins* 271, 283 ("XI. That all prisoners shall be bailable by sufficient sureties, unless for capital offences, where the proof is evident, or the presumption great."); *The Generall Lawes and Liberties of the Province of New Hampshire* (Mar. 16, 1680), *reprinted in Colonial Origins* 5, 24 (No pre-sentence incarceration without opportunity to post "suiffient security, bail or maine price, for his appearance and good behavior in ye mean time, unless it be in crimes captall."); *The Book of the General Lawes and Libertyes Concerning the Inhabitants of the Massachusets* (Jan. 14, 1647), *reprinted in Colonial Origins* 95, 119–20 (similar); *Liberties of the Massachusets Collonie in New England* (Dec. 1641), *reprinted in Colonial Origins* 70, 73 ("No mans person shall be restrained or imprisoned by any Authority what so ever, before the law hath sentenced him thereto, If he can put in sufficient securitie, bayle or mainprise, for his appearance, and good behaviour in the meane time, unlesse it be in Crimes Capitall, and Contempts in open Court, and in such cases where some expresse act of Court doth allow it."); *see also* Albert W. Alschuler, *Preventive Pretrial Detention and the Failure of Interest-Balancing Approaches to Due Process*, 85 MICH. L.REV. 510, 549–58 (1986); June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 SYRACUSE L.REV. 517 (1983); Foote, *supra* note 4.

7. *See* 4 William Blackstone, *Commentaries on the Laws of England*, at 293–97 (1769)[hereinafter 4 Blackstone, *Commentaries*], *reprinted in* 5 *The Founders' Constitution* 370–71 (Philip B. Kurland and Ralph Lerner, eds.1987) [hereinafter *The Founders' Constitution* ]("[The] commitment [to prison] therefore being only for safe custody, wherever bail will answer the same intention, it ought to be taken; as in most of the inferior crimes: but in felonies, and other offences of a capital nature, no bail can be a security equivalent to the actual custody of the person. For what is there that a man may not be induced to forfeit, to save his own life? ... In civil cases we have seen that every defendant is bailable; but in criminal matters it is otherwise.... And, first, to refuse or delay to bail any person bailable, is an offence against the liberty of the subject.... But, where the imprisonment is only for safe custody *before* the conviction, ... in such cases bail is ousted or taken away, wherever the offence is of a very enormous nature: for then the public is entitled to demand nothing less than the highest security that can be given; *viz.* the body of the accused, in order to ensure that justice shall be done upon him, if guilty.... [Such persons who are not entitled to bail by statute include] [p]ersons charged with other felonies, or manifest and enormous offences.... To allow bail to be taken commonly for such enormous crimes, would greatly tend to elude the public justice."); *see also Connecticut Constitutional Ordinance of 1776, reprinted in* 5 *The Founders' Constitution* 373 ("4. And that no Man's Person shall be

¶ 19 In English common law, there were more than 200 capital crimes. This number was reduced to fewer than twenty in the common law of the American Colonies.[8]

¶ 20 It was in the section titled "Laws Agreed Upon in England" of the relatively liberal Pennsylvania charter that the phrase appears permitting bail for capital offenses except "where the proof is evident, or the presumption great." *Charter of Liberties and Frame of Government of the Province of Pennsylvania in America* (May 5, 1682), *reprinted in Colonial Origins* 271, 281–83.[9] According to a noted commentator on the subject, these strictures regarding bail were a part of the development of American law that was "an entirely indigenous development which deviated sharply from English precedent." Foote, *supra* note 4, at 975. The form in which it was expressed in Pennsylva-

nia "reappeared in North Carolina in 1776 and later was widely copied in 19th century state constitutions: 'That all prisoners shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident, or the presumption great.'" *Id.* (Citations omitted.)

¶ 21 Contemporaneously with this reduction in the number of capital crimes, the individual American colonies began to permit the denial of bail in non-capital cases, e.g., for the repetition of the same offense.[10] While "[t]he capital offense exception accentuates the gravity of the nature of the offense in order to sustain a denial of a fundamental right[,] [t]he [other] exception[s] represent[ ] an intention to create a classification of comparable gravity." *Scott v. Ryan,* 548 P.2d 235, 236 (Utah 1976).[11]

---

restrained or imprisoned, by any authority whatsoever, before the Law hath sentenced him thereunto, if he can and will give sufficient Security, Bail, or Mainprize for his Appearance and good Behaviour in the mean Time, unless it be for Capital Crimes ... or in such Cases wherein some express Law doth allow of, or order the same.").

8. The most usual of the American capital offenses were idolatry, witchcraft, blasphemy, treason, murder, adultery, male homosexual acts, bestiality, "man stealing" (defined "for the Colonie and province of Providence" as "the taking away, deflouring, or contracting in marriage a maid under sixteen years of age" against the will of or unknown to her father or mother), rape, false witness with the purpose of taking a man's life, cursing or striking a parent, and being a stubborn or rebellious son. *See The Generall Lawes and Liberties of the Province of New Hampshire* (Mar. 16, 1680), *reprinted in Colonial Origins* 5, 6–8 (adding "wilful burning"); *Acts and Orders for the Colonie and province of Providence* (May 1647), *reprinted in Colonial Origins* 178, 189–90; *The Book of the General Lawes and Libertyes Concerning the Inhabitants of the Massachusets* (Jan. 14, 1647), *reprinted in Colonial Origins* 95, 102–03; *Capitall Lawes of Connecticut* (Dec. 1, 1642), *reprinted in Colonial Origins* 229–31; *Liberties of the Massachusets Collonie in New England* (Dec. 1641), *reprinted in Colonial Origins* 70, 83–84; *Articles, Lawes, and Orders, Divine, Politique, and Martiall for the Colony in Virginea* (1610–11), *reprinted in Colonial Origins* 314, 316–26 (adding speaking "impiously" against the "blessed Trinitie," theft, "tak[ing] away any thing from any Indian coming to trade, or otherwise," defrauding the colony, "rob[bing] any garden ... any vineyard ... [or] any eares of the corne growing," removing "any commoditie of this countrey ... out of the Colonie for his or

their owne private uses" and other offenses upon the third repetition such as slandering or disobeying the orders of the colony's governing officers or cursing "the name of God."). Blackstone also mentions treason, 4 Blackstone, *Commentaries,* at 293–97, and espionage/treason remains punishable by death in many jurisdictions, including federal. 18 U.S.C. §§ 794, 2381 (2000). Although the death penalty was declared in a plurality opinion of the United States Supreme Court to be a disproportionate punishment for the rape of an adult woman, *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (plurality opinion), historically it was a capital offense, and the rape of a child remains a capital offense in some states. *See* Melissa Meister, Note, *Murdering Innocence: The Constitutionality of Capital Child Rape Statutes,* 45 ARIZ. L.REV. 197, 200, 210–12 (2003).

9. *Cf. State v. Konigsberg,* 33 N.J. 367, 164 A.2d 740, 742 (1960) (discussing early origins of phrase), *modified and overruled on other grounds, State v. Engel,* 99 N.J. 453, 493 A.2d 1217 (1985).

10. *See Articles, Lawes, and Orders, Divine, Politique, and Martiall for the Colony in Virginea* (1610–1611), *reprinted in Colonial Origins* 314, 316–26 (including as other capital offenses certain crimes upon the third repetition such as slandering or disobeying the orders of the colony's governing officers or cursing "the name of God.").

11. In the federal courts other than for the District of Columbia, the right to bail in non-capital cases was established by the Judiciary Act of 1789, 1 Stat. 91, § 33 (1789). Before that, the Confederation Congress used phraseology similar to that of Pennsylvania in Article II of the Ordi-

¶ 22 Ultimately, though, the criminal jurisprudence of the United States and any discussion of bail is founded on a presumption of individual innocence. *See Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951) ("Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning."). *But cf. Bell v. Wolfish,* 441 U.S. 520, 533, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (suggesting that presumption of innocence a matter of trial procedure). Thus, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno,* 481 U.S. at 755, 107 S.Ct. 2095. The interests served by detention accordingly must be legitimate and compelling; the denial of bail is not for the purpose of punishment. *Id.* at 746–47, 107 S.Ct. 2095.[12]

¶ 23 The denial of bail pursuant to A.R.S. § 13–3961(A) serves a governmental interest that is legitimate and compelling. The statute is a regulatory guarantee that a person accused of certain serious crimes stand trial upon a showing that the proof is evident and the presumption great that he committed those offenses with which he is charged. *See In re Nordin,* 192 Cal.Rptr. at 41.

¶ 24 In *Salerno,* the Supreme Court gave great weight to the fact that pre-trial detention was limited "to the most serious of crimes," 481 U.S. at 747, 107 S.Ct. 2095, and history supports this view. "As the colonies adopted constitutional provisions granting rights for release pending trial, they maintained the rule that where the risk that the guilty might escape out-weighed the objective of preventing the punishment of the innocent, the court could refuse bail." *Duff,* 563 A.2d at 261.

¶ 25 The Arizona crimes for which bail may be denied in accord with A.R.S. § 13–3961(A) are limited to four classes of offenses, including that with which this case is concerned, i.e., sexual conduct with a minor less than fifteen years of age. In denominating the offense as one for which bail may be denied under delineated circumstances and in a manner consistent with due process, the Arizona Legislature and voters have, in the words of the Utah Supreme Court, weighed "the gravity of the nature of the offense in order to sustain a denial of a fundamental right." *Scott,* 548 P.2d at 236.[13] Permissible pre-trial detention is limited to crimes that involve inherent and continuing risks if bail were granted.[14]

nance for the Government of the Territory of the United States North–West of the River Ohio on July 13, 1787. 1 Stat. 51, 52 (1787) ("[A]ll persons shall be bailable, unless for capital offences, where the proof shall be evident, or the presumption great."); *see* Foote, *supra* note 4, at 970–71.

12. *See Stack,* 342 U.S. at 4, 72 S.Ct. 1 ("This traditional right to freedom before conviction . . . serves to prevent the infliction of punishment prior to conviction."); *Ex parte Milburn,* 34 U.S. 704, 710, 9 Pet. 704, 9 L.Ed. 280 (1835) ("A recognizance of bail, in a criminal case, is taken to secure the due attendance of the party accused to answer the indictment, and to submit to a trial, and the judgment of the court thereon. It is not designed as a satisfaction for the offense . . . ."); *see also Gusick v. Boies,* 72 Ariz. 233, 236–37, 233 P.2d 446, 448 (1951) ("[A]n aroused state of public opinion against one accused of crime is no ground for the fixing of excessive bail."). *See generally* Ronald Goldfarb, *Ransom: A Critique of the American Bail System* (1965).

13. *See People v. Super. Ct.,* 20 Cal.App.4th 936, 25 Cal.Rptr.2d 38, 41 (1993) ("The core reason for denying bail to defendants charged with capi-

tal crimes relates directly to the gravity of the crime."); *State v. Hill,* 314 S.C. 330, 444 S.E.2d 255, 256 (1994) ("By treating bail in capital cases differently from bail in other cases . . . our Constitution recognizes the risks inherent in admitting capital defendants to bail.").

14. Simpson insists that he must be released on bail so that he may effectively assist in the defense of his case. No Arizona case and only a minuscule amount of other law suggests that, under rare and special circumstances, a capital defendant may be released on bail to preserve his right to a fair trial. *See People v. Barnett,* 17 Cal.4th 1044, 74 Cal.Rptr.2d 121, 954 P.2d 384 (contrasting a case in which a capital defendant presented no legal argument why he should be released to assist an investigator to a juvenile case in which race was a barrier to locating and persuading potential witnesses to testify for the defendant), *cert. denied,* 525 U.S. 1044, 119 S.Ct. 598, 142 L.Ed.2d 539 (1998); *State v. Tibbetts,* 92 Ohio St.3d 146, 749 N.E.2d 226, 241–42 (2001)(finding that capital defendant must make particularized arguments describing why he was or would be unable to adequately assist in preparing his defense), *cert. denied,* 534 U.S. 1144, 122 S.Ct. 1100, 151 L.Ed.2d 997 (2002).

### III. Burden of Proof

 ¶ 26 Although there is no right to bail, because of the potential for a compromise of personal liberty, there is a presumption in favor of bail. An exception exists when the proof is evident or presumption great that an accused is guilty of the crimes enumerated in A.R.S. § 13–3961(A). Section 13–3961(A) creates the distinct classifications that mark a departure from the standard. *See Scott*, 548 P.2d at 236.

 ¶ 27 Given the presumption of innocence and the presumption in favor of bail, to afford the accused due process, he must be provided a hearing, *Rayes*, 206 Ariz. at 61 ¶ 11, 75 P.3d at 151, during which he must be given "an opportunity to be heard at a meaningful time and in a meaningful manner." *Huck v. Haralambie*, 122 Ariz. 63, 65, 593 P.2d 286, 288 (1979); *see also Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The burden of proving an exception to bail lies with the State. *Martinez v.Super. Ct.*, 26 Ariz.App. 386, 387, 548 P.2d 1198, 1199 (1976) ("[T]he state has the burden of showing that the right to bail is limited rather than absolute."); *In re Haigler*, 15 Ariz. 150, 153, 137 P. 423, 425 (1913); *see Kirkland v. Fortune*, 661 So.2d 395, 397 (Fla.Dist.Ct.App.1995); *Hill*, 444 S.E.2d at 257 (Because of the presumption of innocence, "the State bears the burden of persuasion to convince the court not to release a capital defendant on bail," but there is a rebuttable presumption that the defendant is not entitled to bail.). Indeed, apart from the presumption in favor of bail, the State is in a position superior to that of the accused to produce evidence during a hearing because it already will have presented evidence in the process of charging the person. Otherwise, "[p]lacing the burden on the accused is, in effect, forcing him to prove a negative." *People v. Purcell*, 201 Ill.2d 542, 268 Ill.Dec. 429, 778 N.E.2d 695, 700 (2002) ("Had the framers intended that a capital defendant could never receive bail unless he or she met certain burdens or made significant showings at the pretrial phase of proceedings, it is reasonable to assume that they would not have accomplished this goal in such a cumbersome manner.").[15]

### IV. Standard of Proof

 ¶ 28 Although the meaning of the phrase "proof is evident or presumption great" is not defined by A.R.S. § 13–3961, it is explained in the case law of Arizona and other states. Simpson argues that the standard should equate to proving guilt by clear and convincing evidence.[16] The State responds that the burden should be more than probable cause but less than that of clear and convincing, specifically "strong, clear evidence."

¶ 29 The history of the phrase alone suggests that it is unique and that it establishes its own standard since there is no comparison for recourse. To state otherwise would be to

---

15. In fact, almost all of the states employing the "proof evident or presumption great" standard for bail place the burden upon the State. *See* Mont.Code. Ann. § 46–9–102 (2003); *Renton v. State*, 265 Ark. 223, 577 S.W.2d 594, 595 (1979); *Lucero v. Dist. Ct. of Twelfth Jud. Dist.*, 188 Colo. 67, 532 P.2d 955, 957 (1975); *Elderbroom v. Knowles*, 621 So.2d 518, 520 (Fla.Dist.Ct.App. 1993); *Sakamoto v. Won Bae Chang*, 56 Haw. 447, 539 P.2d 1197, 1199 (1975); *Ford v. Dilley*, 174 Iowa 243, 156 N.W. 513 (Iowa 1916); *Marcum v. Broughton*, 442 S.W.2d 307, 309 (Ky. 1969); *Harnish v. State*, 531 A.2d 1264, 1266 (Me.1987); *Engel*, 493 A.2d at 1226–27; *Serrano v. State*, 83 Nev. 324, 429 P.2d 831, 833 (1967); *Commonwealth v. Heiser*, 330 Pa.Super. 70, 478 A.2d 1355, 1356 (1984); *Taglianetti v. Fontaine*, 105 R.I. 596, 253 A.2d 609, 611 (1969); *Hill*, 444 S.E.2d at 257; *State ex rel. Jefferson v. State*, 222 Tenn. 413, 436 S.W.2d 437, 438 (1969); *Ex parte Collum*, 841 S.W.2d 960, 961–62 (Tex.Crim.App. 1992); *Scott*, 548 P.2d at 236; *Duff*, 563 A.2d at 263. *But see* Del.Code. Ann. tit. 11, § 2103(b) (2001) (burden on defendant); La.Code Crim. Proc. Ann art. 331 (West 2003) (prior to indictment, burden on State but, after indictment, burden on defendant); *State v. Lowe*, 204 Ala. 288, 85 So. 707, 708 (1920); *Quillen v. Betts*, 98 A.2d 770, 773 (Del.1953); *Caudill v. State*, 262 Ind. 40, 311 N.E.2d 429, 430 (1974); *Fischer v. Ball*, 212 Md. 517, 129 A.2d 822, 826 (1957); *Huff v. Edwards*, 241 So.2d 654, 655–56 (Miss.1970) (prior to indictment, burden on State but, after indictment, burden on defendant).

16. Simpson argues that *Salerno* requires proof of clear and convincing evidence, but, in this regard, *Salerno* does not apply because it addressed a federal statute with the articulated standard of clear and convincing evidence. Additionally, a wide range of standards are employed in various jurisdictions.

put a 21st century gloss on or give a modern substitute definition to an historic legal phrase. Even so, when addressing this issue, the courts of other states have reached a multitude of different conclusions,[17] and the degree of proof ranges from requiring that the evidence simply show a fair likelihood of conviction, *Engel*, 493 A.2d at 1220, to evidence beyond that quantum necessary to convict the accused. *Kirkland*, 661 So.2d at 397. We divide the cases into three categories: (1) those requiring some variation of probable cause or a fair likelihood that the accused committed the crime; (2) those requiring some variation of clear and convincing or clear and strong evidence that the accused committed the crime; and (3) those requiring some variation of evidence beyond a reasonable doubt that the accused committed the crime.

¶ 30 This is a different analysis than that reached by the Rhode Island Supreme Court in *Fountaine v. Mullen*, 117 R.I. 262, 366 A.2d 1138 (1976). The Rhode Island court found that there were five categories of cases: (1) not a finding of guilt, but, rather, a judicial determination "whether the evidence, viewed in the light most favorable to the state, is legally sufficient to sustain a verdict of guilty;" (2) "whether the evidence introduced at the bail hearing demonstrates guilt beyond a reasonable doubt;" (3) "whether the evidence is clear and strong, and leads to a well-guarded and dispassionate judgment that the accused is guilty and probably would be punished capitally;" (4) whether, after weighing the evidence, it "tends strongly to show guilt;" and (5) whether the evidence demonstrates guilt to the degree of probable cause. *Id.* at 1140–41.

¶ 31 We adopt our second and the Rhode Island Supreme Court's third category of the quantum of proof necessary for the State. We thereby join the Rhode Island court in rejecting a standard of probable cause [18] or a standard of beyond a reasonable doubt.

First we think it clear from the language itself that "proof is evident or the presumption great" means something more

---

17. *See e.g.*, Del.Code Ann. tit. 11, § 2103(b) (The court may admit to bail a person charged with a capital crime if "there is good ground to doubt the truth of the accusation."); *Trammell v. State*, 284 Ala. 31, 221 So.2d 390, 390 (1969) (clear and strong); *In re Steigler*, 250 A.2d 379, 383 (Del.1969) (fair likelihood); *Engel*, 493 A.2d at 1220 (fair likelihood); *Kirkland*, 661 So.2d at 397 ("greater degree of proof than that establishing guilt merely to the exclusion of a reasonable doubt"); *Sakamoto*, 539 P.2d at 1199 (fair likelihood); *Ford*, 156 N.W. at 532 ("Putting it concretely, proof of capital guilt is evident only when the evidence, on its face and unexplained, excludes any other reasonable conclusion. The presumption of such guilt is great when the circumstances testified to are such that inference of guilt naturally due to be drawn therefrom is strong, clear, and convincing to the unbiased judgment, and is such as to exclude all reasonable probability of any other conclusion."); *Smiddy v. Barlow*, 288 S.W.2d 346, 347 (Ky.1956) (State must show "manifest guilt or produce[ ] evidence sufficient to create great presumption of guilt."); *Harnish*, 531 A.2d at 1266 ("State's showing of probable cause defeats a capital defendant's constitutional right to bail."); *Hanley v. State*, 85 Nev. 154, 451 P.2d 852, 857 (1969) ("The quantum of proof necessary to establish the presumption of guilt mentioned in the Constitution and the statute is considerably greater than that required to establish the probable cause necessary to hold a person answerable for an offense."); *Brill v. Gurich*, 965 P.2d 404, 408 (Okla.Crim.App.1998) (clear and convincing); *In re Haynes*, 290 Or. 75, 619 P.2d 632, 636 (1980) (clear and convincing); *Heiser*, 478 A.2d at 1356 ("'[P]roof is evident or presumption great' when State establishes a prima facie case of the non-bailable offense.); *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn.2000) (In a habeas corpus proceeding, the defendant must show by a preponderance of the evidence that confinement is illegal.); *Ex parte Espinoza*, 90 S.W.3d 906, 908 (Tex.App.2002) (State must make a " 'substantial showing,' which is far less than the trial burden of 'beyond a reasonable doubt.' " (Citation omitted.)); *State v. Kastanis*, 848 P.2d 673, 675–76 (Utah 1993) (substantial evidence); *Duff*, 563 A.2d at 263 ("State must show that facts exist that are legally sufficient to sustain a verdict of guilty. The trial court must make a specific finding that this burden has been met.").

18. *But cf. Hafenstein v. Burr*, 92 Ariz. 321, 376 P.2d 782 (1962), involving a writ of habeas corpus. The defendant claimed that he was being improperly held without bail on a charge of first-degree murder. While he admitted that he had killed the victim, he challenged the denial of bail because he did not think that the State had presented sufficient facts to the court to prove that he had committed murder in the first degree. The court suggested that probable cause was enough to detain the defendant before trial because there was "a strong suspicion that probable cause exists that the defendant may be guilty of murder in the first degree." *Id.* at 323, 376 P.2d at 783.

than probable cause for if it were to be read in such a manner, the guarantee would add nothing to the accused's rights, since a suspect may not be held without a showing of probable cause in any instance. Second, we think it apparent that, on a habeas hearing for release on bail, the state need not prove the accused's guilt beyond a reasonable doubt. That degree of proof is reserved for trial and is not what the writers of our constitution had in mind in providing for bail. Not only is it highly improbable that the framers intended the bail hearing to determine the precise question to be answered at the trial itself, but such duplication obviously wastes judicial resources and might prejudice a defendant's opportunity for a fair trial. If it becomes common practice to deny bail only after a judge has determined that the evidence produced at the bail hearing demonstrates guilt beyond a reasonable doubt, and the jury learns that a defendant has been denied bail, they may be highly predisposed to convict.

*Id.* at 1141–42 (citations omitted); *see also Pope v. United States,* 739 A.2d 819, 825–26 (D.C.1999) (discussing the standard of proof for the statutory phrase "reason to believe" and finding that the measure should not be probable cause because such a level would substantially undermine the constitutional safeguards guaranteed the accused).

¶ 32 The Oregon Supreme Court rejected an earlier holding that, to deny bail to a capital defendant, "the evidence must show 'a fair likelihood' that defendant would be convicted." *In re Haynes,* 619 P.2d at 636. The court concluded instead that "[t]he words 'strong' and 'evident' may be said to demand more than 'a fair likelihood.'" *Id.* Upon this reasoning it held that "guilt need not be shown 'beyond a reasonable doubt,' as it must for conviction, [but] the evidence should at least be clear and convincing." *Id.* (citing Jeff Thaler, *Punishing the Innocent: The Need for Due Process and the Presumption of Innocence Prior to Trial,* 1978 WISC. L.REV. 441).

¶ 33 Although Simpson argues that the standard of "proof is evident or presumption great" equates to the standard of proof

by clear and convincing evidence, the meaning of the phrase "proof is evident or presumption great" is ambiguous and, therefore, the legislative intent controls. *See Lowry v. Tucson Diesel, Inc.,* 17 Ariz.App. 348, 350, 498 P.2d 160, 162 (1972). We, of course, "look to the language of the statute and give effect to its terms according to their commonly accepted meanings," and we "seek a sensible construction." *Woodworth v. Woodworth,* 202 Ariz. 179, 181 ¶ 12, 42 P.3d 610, 612 (App.2002); *see Arpaio v. Steinle,* 201 Ariz. 353, 355 ¶ 5, 35 P.3d 114, 116 (App. 2001); *HCZ Constr., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364 ¶ 10, 18 P.3d 155, 158 (App.2001). The "words should be given their natural, obvious, and ordinary meaning." *Arpaio,* 201 Ariz. at 355 ¶ 5, 35 P.3d at 116 (citation omitted); *see* A.R.S. §§ 1–211, 1–213 (2002).

¶ 34 The Arizona Supreme Court gave direction when it held in a capital case that, when there is a strong presumption of guilt, bail must be denied. *Haigler,* 15 Ariz. at 152–53, 137 P. at 424. It added the following guidance:

Looking at all of the evidence offered and viewing it in the light of the presumption of innocence, and remembering that to grant bail is the rule and the refusal of it is the exception, Does such evidence place the case within the exception? Does it clearly impress the mind of the magistrate or court that the offense committed is murder in the first degree, and is there a strong presumption arising from a fair consideration of such evidence that the accused is guilty thereof? If all of the evidence offered when so considered makes it clear to the understanding and satisfactory to the judgment that the crime committed is murder in the first degree and the presumption is great that the accused is guilty thereof, the case then fulfills the requirements of the law in this respect, and bail must be denied, for the burden imposed upon the state to show that the case of the accused comes within the exception prohibiting the allowance of bail has been discharged, otherwise bail should be granted in such sum as under all

the circumstances of the case may be just and reasonable.

*Id.* at 153, 137 P. at 424–25.

¶ 35 Florida has a constitutional provision similar to that of Arizona denying bail to a person "charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great." *Kirkland,* 661 So.2d at 396 (quoting FLA. CONST. Art. 1, sec. 14). Like this court, which "may refer to an established and widely used dictionary," *State v. Mahaney,* 193 Ariz. 566, 568 ¶ 12, 975 P.2d 156, 158 (App.1999), the Florida court utilized a dictionary and found that "[t]he word 'evident' is defined by Webster as 'clear to the understanding and satisfactory to the judgment.' Synonyms: 'Manifest, plain, clear, obvious, conclusive.' The word 'manifest' is defined as follows: 'To put beyond question of doubt.'" *Id.* at 397; *see also State v. Kauffman,* 20 S.D. 620, 108 N.W. 246 (1906) (concluding that it would be unwise to articulate a standard of general applicability but similarly defining "evident").[19] The Florida court then held that the State must establish that the proof is evident or presumption great "to the point of being manifest, obvious, beyond a question of doubt." *Kirkland,* 661 So.2d at 397. It reasoned that, since the constitutional provision denying bail embodies the presumption of innocence, the State should bear a burden greater than what is necessary to convict the defendant. *Id.*

¶ 36 We do not agree with the Florida court that, for the purpose of denying bail, the State is required to carry a greater burden than it must to prove its case beyond a reasonable doubt. The greatest burden of proof should be put on the State to convict the accused. Indeed, a lesser burden of proof has been held by the Arizona Supreme Court to be sufficient to detain the accused yet consistent with the presumption of the accused's innocence. *Rendel,* 106 Ariz. at 237–38, 474 P.2d at 828–29. "While we adhere to the concept that an accused enjoys a presumption of innocence until proven guilty, it is clear that this presumption has never stood in the way of the state to exert its power to restrain an accused when probable cause is shown that he committed a crime." *Id.*

¶ 37 Texas has a constitutional provision stating that a person charged with a capital offense may be denied bail if "the proof is evident." TEX. CONST. art. 1, § 11. Its court has defined "evident" as clear and strong evidence that would lead to a well-guarded judgment, *Beck v. State,* 648 S.W.2d 7, 9 (Tex.Crim.App.1983), similar to the definition of the Florida court. Also like the Florida court, the Texas court has held that this was the burden the State must successfully bear.

> [T]he word "evident" not only means that the proof is plain, clear and obvious that that offense has been committed, but also that the death of the deceased was produced by the unlawful act or acts of the accused. This court has pronounced the following rule for observance in cases of this nature: (1) The burden of proof is on the State to establish by evident proof that a capital offense has been committed; (2) that by the same character of proof the accused is the guilty perpetrator of said offense; and (3) that to deny bail, the court must find these propositions in the affirmative.

*Ex parte Gragg,* 149 Tex.Crim. 10, 191 S.W.2d 32, 33 (1945).[20] Nonetheless, the

---

19. The Oxford English Dictionary (1989) at 470 defines "evident" as "[c]lear to the understanding or judgement; obvious, plain" and "[i]ndubitable, certain, conclusive." Another dictionary defines "evident" as "visible, clear, out and plain; easy to see or perceive; apparent." WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 634 (2nd ed.1983). Synonyms for "evident" are "plain, visible, conspicuous, manifest, obvious, clear, palpable, apparent, discernable." *Id.* "Manifest" in turn is defined as "to make clear or evident, to show plainly, reveal, evince," *id.* at 1095, and "apparent" is defined as "readily understood, obvious; clear; evident." *Id.* at 88.

20. Over the years, " 'proof evident' or 'evident proof' in this connection has been held to mean clear, strong evidence which leads a well-guarded dispassionate judgment to the conclusion that the offense has been committed as charged, that accused is the guilty agent, and that he will probably be punished capitally if the law is administered." 8 C.J.S. *Bail* § 20 (1988); *see also Ex parte Bynum,* 294 Ala. 78, 312 So.2d 52, 55, 71 A.L.R.3d 442 (1975); *Huff v. Edwards,* 241 So.2d 654, 656 (Miss.1970) (citing 8 C.J.S. *Bail* § 34(3) (1962), *renumbered* 8 C.J.S. *Bail* § 20 (1988)); *Ex parte Krueger,* 391 S.W.2d 737, 738 (Tex.Crim.App.1965); *Beck v. State,* 648 S.W.2d

Texas court held, contrary to the Florida court, that this degree of proof at a bail hearing "requires a 'substantial showing,' which is far less than the trial burden of 'beyond a reasonable doubt.'" *Espinoza*, 90 S.W.3d at 908 (citation omitted); *see Angleton*, 955 S.W.2d at 657; *Lee v. State*, 683 S.W.2d 8, 9 (Tex.Crim.App.1985); *Ex parte Moore*, 594 S.W.2d 449, 452 (Tex.Crim.App. 1980).[21]

¶ 38 Similar to the progression of the Texas definition, in 1988, the voters of Utah amended the language of their statute regarding bail for capital offenses. *Kastanis*, 848 P.2d 673. The amendment in effect defined the older statutory language of the "proof is evident or the presumption strong" as "substantial evidence to support the charge." *Id.* at 674. The Utah appellate courts had previously decided that the State's burden of showing that the "proof is evident or the presumption strong" would be met if the evidence presented "furnish[ed] a reasonable basis for a jury finding of a verdict of guilty of a capital crime," and the court in *Kastanis* held that this same analysis applied to the "substantial evidence" standard. *Id.* at 676.

¶ 39 The Arizona standard cannot be "clear and convincing" because this standard is excluded by the statutory language. Section 13–3961(C), A.R.S., specifically utilizes the "clear and convincing" standard to deny bail in other circumstances. When a statute uses a specific phrase in some sections but not in others, a court cannot read that phrase "into the section from which it was excluded." *See Bigelsen v. Bd. of Med. Exam'rs*, 175 Ariz. 86, 91, 853 P.2d 1133, 1138 (App.1993) (citing

*Board of Regents v. Pub. Safety Ret. Fund Adm'r.*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989)); *see also Patterson v. Maricopa County Sheriff's Office*, 177 Ariz. 153, 156, 865 P.2d 814, 817 (App.1993).

¶ 40 We conclude that the phrase "proof is evident, or presumption great" provides its own standard: The State's burden is met if all of the evidence, fully considered by the court, makes it plain and clear to the understanding, and satisfactory and apparent to the well-guarded, dispassionate judgment of the court that the accused committed one of the offenses enumerated in A.R.S. § 13–3961(A). In that case, bail must be denied. The proof must be substantial, but it need not rise to proof beyond a reasonable doubt.

## V. Proceedings

¶ 41 In *Salerno*, the Court itemized the procedural protections provided the accused in the Bail Reform Act: (1) the right to counsel; (2) the opportunity to testify and present information; (3) the opportunity to cross-examine opposing witnesses; (4) the statutory factors governing the preventive-detention decision-making process; (5) a requirement of findings of fact and a statement of reasons for the decision; and (6) a requirement of proof by clear and convincing evidence. 481 U.S. at 751–52, 107 S.Ct. 2095. Courts that have incorporated the *Salerno* analysis have adopted all or most of these attributes as minimum requirements of procedural due process. *See Brill*, 965 P.2d at 407–08; *Aime v. Commonwealth*, 414 Mass. 667, 611 N.E.2d 204, 214 (1993); *Witt v. Moran*, 572 A.2d 261, 267 (R.I.1990). Be-

7, 9 (Tex.Crim.App.1983); *Ex parte Wilson*, 527 S.W.2d 310, 311 (Tex.Crim.App.1975); *Espinoza*, 90 S.W.3d at 908; *Angleton v. State*, 955 S.W.2d 655, 657 (Tex.App.1997), *rev'd on other grounds*, 971 S.W.2d 65 (Tex.Crim.App.1998). The phrase "presumption great" has also been defined in case law. "'Presumption great' exists when the circumstances testified to are such that the inference of guilt naturally to be drawn therefrom is strong, clear, and convincing to an unbiased judgment and excludes all reasonable probability of any other conclusion." 8 C.J.S. *Bail* § 20; *see also Ford*, 156 N.W. at 530; *Huff*, 241 So.2d at 656 (citing 8 C.J.S. *Bail* § 34(3) (1962), *renumbered* 8 C.J.S. *Bail* § 20 (1988)).

21. The *Lee* and *Moore* decisions concerned Texas Constitution article 1, section 11a, which provides that "Any person ... accused of a felony less than capital in this State, committed while on bail for a prior felony for which he has been indicted, ... upon evidence substantially showing the guilt of the accused of the offense ... committed while on bail, ... may be denied bail." This requirement of a substantial showing, although not provided in the constitutional language of article 1, section 11 discussing capital offenses, is now incorporated by *Espinoza* and *Angleton* in the burden of proof required to deny bail when the "proof is evident" that a defendant has committed a capital offense according to the Texas Constitution.

cause of the liberty interest involved, as we have already stated, the State must carry its burden of proof at a hearing necessary to determine whether the proof is evident or presumption great. We find persuasive the reasoning of those courts that view at least most of the procedural protections enunciated in *Salerno* as necessary for the Arizona law to comply with procedural due process.

¶ 42 While these procedures are necessary, it must be added "that the proceeding is not a wide-ranging one for discovery, nor for exploration or determination of guilt or innocence," and that the focal point of the inquiry—determining whether the proof is evident or presumption great—must be kept in mind at all times. *Kastanis*, 848 P.2d at 676 (citations omitted); *see In re Haynes*, 619 P.2d at 642 ("[T]he bail hearing is not for a determination of guilt or innocence, but rather a determination of the preliminary issue of the right to bail.... [T]he evidence adduced at the hearing as precluding pretrial release must be sufficient to support a finding that the 'proof' is 'evident' or gives rise to a 'strong' presumption of guilt." (Citation omitted.)).

¶ 43 Simpson maintains that all evidence produced at the bail hearing must comport with the rules of evidence. This argument is in accord with the holdings of the courts in a few jurisdictions. *See, e.g., In re Haynes*, 619 P.2d at 642; *Massey v. Mullen*, 117 R.I. 272, 366 A.2d 1144, 1145–46 (1976); *Chynoweth v. Larson*, 572 P.2d 1081, 1083 (Utah 1977); *State v. Passino*, 154 Vt. 377, 577 A.2d 281, 284 (1990). The court in *Massey* reasoned that the determination whether proof is evident or presumption great is a "test [that] looks forward to the trial stage rather than backward toward the arrest," thereby comparing two models of preliminary hearings. 366 A.2d at 1146–47.

The backward-looking model stresses the preliminary and nonfinal nature of the hearing and places emphasis upon the fact that the proceeding is not a trial but is only an initial screening mechanism occurring very shortly after the accused has been arrested. The focus of the inquiry would be upon the factual, as contrasted to the legal, guilt or innocence of the accused,

just as it is when a magistrate is considering whether there is "probable cause" to issue an arrest warrant.... Hearsay and other evidence which would be incompetent at trial, as well as illegally obtained evidence, would be admissible at the preliminary examination.... The primary concern of [the forward-looking] model is whether there is a sufficient probability of conviction at trial to warrant further proceedings and those cases for which such a probability does not exist are screened out; the perspective is forward, toward trial, rather than backward, toward the arrest. The focus of this hearing is upon the probability of the legal, rather than factual, guilt or innocence of the accused whose interests in avoiding further unnecessary proceedings are thus protected.... Since under this model the perspective is toward trial and the primary concern is with the legal guilt or innocence, trial-type standards would generally be imposed; this type of hearing would thus be more judicial than the backward-looking model.... [I]llegally obtained evidence would be excluded. The prosecution would be required to introduce evidence (either direct or circumstantial) which would be legally sufficient to avoid a directed acquittal at trial: evidence of every element of the offense charged which is sufficiently credible and persuasive that the jury would be allowed to convict upon such evidence.

Note, *The Function of the Preliminary Hearing in Federal Pretrial Procedure*, 83 YALE L.J. 771, 776–77, 779–80 (1974) (footnotes omitted).

¶ 44 Given that the question at a bail hearing is not the guilt of the accused, we conclude that the hearing should follow a "backward-looking" model. As is true in Delaware, *Blount v. State*, 511 A.2d 1030, 1039 (Del.1986), in Arizona, a hearing regarding whether the proof is evident or presumption great that the accused committed one of the crimes enumerated in A.R.S. § 13–3961(A) is inherently similar to a preliminary hearing, and the court should admit only such evidence as is material to the question. The accused is entitled to counsel. The parties must have the right to examine/cross-exam-

ine the witnesses and to review in advance those witnesses' prior statements that are written. The court must make a determination on the record whether there is evident proof or great presumption that the accused committed one of the statutory charges, including the facts it finds and the analysis it employs.

¶ 45 Historically, the English courts and the courts in the American colonies refused to "go behind the indictment" because that evidence had been obtained in secret. *See Ford,* 156 N.W. at 519–21; *Harnish,* 531 A.2d at 1266, 1268. "The evidence before the grand jury being a sealed book, the indictment raised a conclusive presumption, on application for bail, that the official act of presenting indictment was sustained by sufficient evidence." *Ford,* 156 N.W. at 519. Thus, if the indictment charged the defendant with a capital crime, he was denied bail. It since has been generally decided, however, that "there is now power to grant bail after indictment." *Id.* at 521.

¶ 46 In the modern era, three different lines of authority have developed concerning the evidentiary weight of the indictment. *See* 8 C.J.S. *Bail* § 21; H.G. Hirschberg, Annotation, *Upon Whom Rests Burden of Proof, Where Bail Is Sought Before Judgment But After Indictment in Capital Case, as to Whether Proof Is Evident or the Presumption Great,* 89 A.L.R.2d 355 (1963 & Supp.2001). The three categories are (1) that the indictment is conclusive evidence against bail, (2) that the indictment serves as a rebuttable presumption of guilt and (3) that the State must produce additional evidence beyond the indictment to demonstrate that the proof is evident or the presumption great that the accused committed the denominated offense. *Id.* Historically the first category was the rule, but, in the middle of the twentieth century, the majority of cases fell in the second category, and now the trend is toward the third category. *See State v. Roth,* 258 Or. 428, 482 P.2d 740, 742 (1971); 89 A.L.R.2d 355.[22]

¶ 47 We choose to follow the third line of cases and hold that, although an indictment against an individual has been returned, the State has the burden to demonstrate that the proof is evident or the presumption great that the accused committed the offense at issue. *See Martinez,* 26 Ariz.App. at 387, 548 P.2d at 1199 ("[T]he state has the burden of showing that the right to bail is limited rather than absolute.").

> We believe that it would be completely illogical and impractical to require an accused, who has not heard the state's evidence against him, to assume the burden of showing that the state's evidence does not establish that the proof or presumption of his guilt is evident or strong.

*Roth,* 482 P.2d at 743. The contrary proposition would undermine the presumption of individual innocence that is the keystone and hallmark of United States criminal law.

> There is something inherently contradictory in maintaining the presumption of innocence until final conviction and, at the same time, presuming probable guilt from the fact of indictment when the accused seeks to exercise his constitutional right to bail.

*In re Steigler,* 250 A.2d at 382.

¶ 48 This Court has held in a capital case "that the mere fact petitioner was indicted for first degree murder has no evidentiary value in the bail determination." *Martinez,* 26 Ariz.App. at 387, 548 P.2d at 1199. The indictment neither suffices nor creates a rebuttable presumption. The State may, however, introduce the record of the grand-jury proceedings for consideration in carrying its burden of showing that the proof is evident or the presumption great that the accused committed the crime in question. *Id. But cf. In re Wheeler,* 81 Nev. 495, 406 P.2d 713, 716 (1965) ("[N]o weight may be given the pleading—the indictment or information—for it is not proof as contemplated by the constitution, nor does it create a presumption of guilt."). It is not sufficient, though, for the prosecutor to offer avowals of the State's

---

**22.** As of 2001, it appears that fourteen states have the rule that the State bears the complete burden of proof and eight states have the rule

that the accused has the burden of proof after the indictment. 89 A.L.R.2d 355.

evidence. "A prosecutor's assertions about evidence that he 'feels' he 'may be able to introduce' are not 'proof.'" *In re Haynes,* 619 P.2d at 642. Beyond that, we are able to state only that "[h]ow much evidence is 'enough evidence' must of necessity be resolved on a case by case basis. A fixed rule cannot be formulated." *In re Wheeler,* 406 P.2d at 716.[23]

¶ 49 Simpson argues that, in a bail hearing, the court should not only determine whether the proof is evident or presumption great that the accused committed the crime but also whether there is compelling evidence that the accused is a flight risk or a risk to recidivate. We reject that contention. Arizona law does not require that a risk of flight or a risk of recidivism be considered before bail is denied. Arizona's voters have spoken directly and through their legislature in amending Article 2, Section 22 of the Arizona Constitution and in enacting A.R.S. § 13–3961(A). *See Garrett,* 16 Ariz.App. at 429, 493 P.2d at 1234 (The people of Arizona have acted "through the Constitution by the [previous] adoption of Article 2, Section 22."). We neither can nor will rewrite those provisions.

¶ 50 This court in *Garrett* addressed the interpretation of Article 2, section 22, subsection 2 of the Arizona Constitution, which then stated that "All persons charged with crime shall be bailable by sufficient sureties, except for: ... 2. Felony offenses, committed when the person charged is already admitted to bail on a separate felony charge and where the proof is evident or the presumption great as to the present charge." *Id.* at 428, 493 P.2d at 1233. The accused had "contend[ed] that the word 'shall' as used in the constitutional amendment is merely directory and not mandatory." *Id.* at 429, 493 P.2d at 1234. We held to the contrary: "The language is mandatory. When a person charged with a felony is already admitted to bail the only determination to be made by the court is whether proof of the new offense is evident or the presumption great." *Id.*

¶ 51 The same is true of the constitutional amendment to Article 2, Section 22(A), to wit, when a person is charged with a capital offense and/or certain sexual offenses, the only determination to be made by the court is whether the proof is evident or the presumption great that the accused committed the crime. If the court determines that the proof is not evident or presumption not great, the accused may be granted bail, leaving the judicial officer to consider what amount of security and/or which conditions will, in the words of Article 2, Section 22(B), "1. Assur[e] the appearance of the accused[,] 2. Protect[ ] against the intimidation of witnesses [and] 3. Protect[ ] the safety of the victim, any other person or the community."

¶ 52 Much of Simpson's argument concerns when the bail hearing should take place. He maintains that, if the burden rests on the State to demonstrate that the proof is evident or presumption great that the accused committed the offense, the accused must be admitted to bail pending a hearing. We agree insofar that the law and the Arizona Rules of Criminal Procedure require a speedy process.

¶ 53 Even though its rules of criminal procedure required that "bail be determined at the first appearance before a judicial officer," the Vermont Supreme Court recognized, as do we, that "[i]t will rarely be possible to hold a full hearing on whether evidence of guilt is great at the first appearance." *Passino,* 577 A.2d at 285. "To facilitate a fair and full determination" whether the accused should be admitted to bail, the case should

---

**23.** For this reason, nothing is to be gained by analyzing every case in which a court has considered the quantum of evidence to find that the proof is evident or the presumption great because, ultimately, this is a finding that is within the judgment of the trial court. We highlight, though, one case in which the Arizona Supreme Court held that the proof was evident or the presumption great that the accused had committed the charged capital offense when the evidence established that the defendant "had been stopped within a mile of [the victim's] nude body, was himself covered with blood and was found with [the victim's] clothes and purse in his truck. A 38–caliber revolver and a dagger had been found in his truck, the gun sitting in a pool of blood. Defendant offered no explanation for the clothes or the weapons." *State v. Brierly,* 109 Ariz. 310, 325, 509 P.2d 203, 218 (1973).

proceed past the "probable cause" stage. *Id.* Thus,

> [b]ased on the initial determination that there is probable cause to believe that the offense was committed and that defendant committed it, ... the court can hold a defendant charged with an offense punishable by life imprisonment without bail for such time as is necessary to enable the parties to prepare for a full bail hearing and to make appropriate motions. We emphasize that the bail hearing must be scheduled as soon as reasonably possible to protect defendant's right to bail.

*Id.* In *Passino,* "twelve days elapsed between the arraignment and the commencement of the bail hearing," and the court concluded that this period of additional detention was reasonable. *Id.; see also Commonwealth v. Garcia,* 478 Pa. 406, 387 A.2d 46, 51 (1978) (holding seventy-day delay acceptable absent allegations that delay hampered defense).

¶ 54 Similar to the procedure in Vermont, a person accused of a crime in Arizona is brought before a judicial officer for an initial appearance within twenty-four hours of his arrest. ARIZ. R.CRIM. P. 4.1(a). Also similar to the procedure in Vermont, at the initial appearance, the judicial officer, among other matters, "[d]etermine[s] whether probable cause exists for the purpose of release from custody" and "[d]etermine[s] the conditions of release" if the accused is charged with an offense that is bailable as a matter of right. ARIZ. R.CRIM. P. 4.2(a)(4), (7), 7.2. It would be a rare occasion when an adequate bail hearing could be conducted at the initial appearance for an offense enumerated in A.R.S. § 13–3961(A). Although a person charged with these offenses may be granted bail if the State cannot successfully satisfy its burden of proof, it is not feasible for the bail hearing to take place at the time of the initial hearing if for no other reason than that the accused "must be given adequate notice to prepare for the hearing." *Kastanis,* 848 P.2d at 676. Additionally, the restrictions on bail in A.R.S. § 13–3961(A) reflect the Arizona Legislature's and voters' belief that a person charged with those offenses poses a greater risk of flight and to the community than a person charged with an offense for which bail may be more readily granted.

¶ 55 Typically, an accused in custody after the initial appearance receives a preliminary hearing within ten days of the initial appearance. ARIZ. R.CRIM. P. 5.1. At this hearing, the judicial officer considers evidence only on the issue whether there is probable cause to hold the accused for trial. ARIZ. R.CRIM. P. 5.3. Because this hearing is often perfunctory and the evidence limited, the bail hearing should not necessarily be conducted at the same time. *See Passino,* 577 A.2d at 285. Thus, while the accused may be held in custody as he awaits a bail hearing, the hearing should take place as soon as is practicable to ensure that the accused is afforded due process and to maintain the presumption of innocence.

## CONCLUSION

¶ 56 The due process that must accompany A.R.S. § 13–3961(A) requires that an evidentiary hearing be conducted consistent with this opinion to determine whether an individual charged with one of the crimes listed in A.R.S. § 13–3961(A) is eligible for bail.

CONCURRING: PATRICK IRVINE, Presiding Judge.

FOREMAN, Judge Pro Tempore,* specially concurring.

¶ 57 I join in the result reached by the majority, and I agree with its reasoning except for the conclusion that the term, "the proof is evident or the presumption great" in A.R.S. § 13–3961(A), cannot mean "clear and convincing evidence." *Infra* ¶ 40. The majority opinion argues that "[w]hen a statute uses a specific phrase in some sections but not in others, a court cannot read that phrase into the section from which it was excluded." *Id.* Respectfully, I disagree.

---

* The Honorable John Foreman, judge of the Superior Court of Maricopa County, was authorized to participate as a Judge *Pro Tempore* of the Court of Appeals by order of the Chief Justice of the Arizona Supreme Court pursuant to Article 6, Section 31 of the Arizona Constitution and A.R.S. § 12–145 *et seq.*

¶ 58 In 1982, the voters modified Article 2, Section 22 to allow denial of bail when a defendant is charged with any felony and is a danger to any other person or the community and no conditions of release "will reasonably assure the safety of the other person or the community." The amendment reaffirmed "proof is evident or the presumption great" as the burden of proof for the "present charge" but did not specify a burden of proof for the issues of dangerousness and alternative conditions of release. Nothing in the drafting of the amendment or the campaign for its passage, however, suggests an intent to impose a different burden of proof for the denial of bail to these two classes of defendants.

¶ 59 The legislature implemented the change to Article 2, Section 22, in 1982 by modifying A.R.S. § 13–3961 to add "clear and convincing evidence" as the burden of proof to establish a defendant's dangerousness and the lack of alternative release conditions. Nothing in the record indicates the legislature intended a different burden of proof to be used to deny bail on some issues, and therefore to some defendants, but not others. Between 1982 and the present, whether "the proof is evident or the presumption great" meant something other than "clear and convincing evidence" was never decided. In most trial courts, the two phrases have been treated as functionally equivalent.

¶ 60 In 2002 Proposition 103 only added three offenses to the list of crimes for which bail may be denied. Nothing in the drafting of Proposition 103, the campaign that led to its passage, or its legislative implementation indicates an intent to mandate a different burden of proof to deny bail to those charged with certain serious crimes and those charged with less serious felonies where the defendant was dangerous and no alternative conditions of release would reasonably assure the safety of an endangered person or the community. See A.R.S. § 13–3961(A), (C).

¶ 61 In choosing the language to specify the burden of proof in A.R.S. § 13–3961(A) and (C), the legislature was obviously constrained by Article 2, Section 22. This constraint distinguishes our case from those relied upon by the majority to support a contention that "proof is evident or the presumption is great" cannot mean "clear and convincing evidence." See, e.g., Bigelsen v. Bd. of Med. Exam'rs, 175 Ariz. 86, 853 P.2d 1133 (App.1993); Patterson v. Maricopa County Sheriff's Office, 177 Ariz. 153, 865 P.2d 814 (App.1993); Bd. of Regents v. Pub. Safety Ret. F. Mgr., 160 Ariz. 150, 771 P.2d 880 (App.1989).

¶ 62 As this court stated in Bigelsen, "[t]he cardinal rule in statutory interpretation is to ascertain and give effect to the intent of the legislature. . . . If the intent of the legislature is not entirely clear from the statutory language, we may also look to the policy behind the statute, and its context, subject matter, effects and consequences." 175 Ariz. at 90, 853 P.2d at 1137 (citations omitted). If we look to the context in which the burden of proof is used and the policy reasons for the statute, it is hard to imagine a "rational" justification for using different burdens of proof.

¶ 63 The legislature made a commendable effort to follow the language of the constitution in 1982 where necessary and to fill in blanks when needed. The courts have a corresponding responsibility to construe the constitution and the statute in harmony so persons of reasonable intelligence can understand and apply them as the drafters, the legislature, and the voters intended. The phrase "the proof is evident or the presumption great" no longer has practical meaning for defendants, victims, attorneys, or judges. The legislature recognized the phrase was archaic and used the more modern term "clear and convincing evidence" in the portion of the statute where no burden of proof was dictated by the language of the constitution. It left to the courts the responsibility of interpretation and harmonization of the statute with the constitution.

¶ 64 Without saying so, the majority apparently concedes United States v. Salerno, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), imposed a constitutional due process floor of "clear and convincing evidence" when bail is denied. See infra n. 5, ¶ 16. The majority also allocates Arizona to the group of states "requiring some variation of clear and convincing or clear and strong evidence

280

that the accused committed the crime." *Infra* ¶ 29. The majority then holds that "[t]he State's burden is met if all of the evidence, fully considered by the court, makes it plain and clear to the understanding, and satisfactory and apparent to the well-guarded, dispassionate judgment of the court that the accused committed one of the offenses enumerated in A.R.S. § 13–3961(A), bail must be denied. The proof must be substantial, but it need not rise to proof beyond a reasonable doubt." *Infra* ¶ 41.

¶ 65 Although I applaud the majority's effort to bring order from the chaos of opinions about the meaning of "proof is evident or the presumption great," its suggested definition is as murky as the archaic phrase it is meant to explain. What is a "plain and clear" understanding? Is "plain and clear" evidence more highly probable than "clear and convincing evidence"? What is "satisfactory and apparent to the well-guarded, dispassionate judgment"? Is it also more highly probable than "clear and convincing evidence"? How is a "well-guarded, dispassionate judgment" different from other judgments? The human mind is a marvelous instrument, but I fear not capable of discerning a difference between clear and convincing evidence and the majority's proposed definition.

¶ 66 The best way to avoid the arbitrary and unequal application of the law is to use a definition of "proof is evident or the presumption great" that is easy to understand and apply. In my opinion, "the proof is evident or the presumption great" in Article 2, Section 22 and A.R.S. § 13–3961 should be defined as "highly probable," which is the definition of "clear and convincing evidence" adopted by our supreme court. *See State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988). This definition is consistent with the intent of the voters, the intent of the legislature and the applicable state and federal constitutional provisions. In all other respects, I join in the majority opinion.